Frank SAETZ, Sr., Plaintiff and Appellant,

v.

Andrew M. HEISER et al., Defendants and Appellees.

Civ. No. 9181.

Supreme Court of North Dakota.

March 26, 1976.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for appellant; argued by Ward M. Kirby, Dickinson.

Freed, Dynes, Malloy & Reichert, Dickinson, for appellees Heiser and Dvorak; Marshall T. Bergerud, Killdeer, for appellees Ferebee, Kussy and Klee; argued by Marshall T. Bergerud, Killdeer.

PEDERSON, Judge.

Appellant Saetz owns Section 27–142–96 in Dunn County. He claims that his principal access to this property is over a section line right-of-way between Sections 33 and 34 lying south and southwest of Section 27. Appellees Heiser and Dvorak are the owners of land in Sections 33 and 34, and appellees Ferebee, Kussy and Klee are members of the board of county commissioners of Dunn County.

In March 1974 Saetz sued because the Dunn County board had first stopped maintaining a county road on the section line and later permitted Heiser and Dvorak to erect fences and engage in farming operations which encroached upon and obstructed the right-of-way, and, also, because the board refused to permit Saetz to do sufficient maintenance on the section line to keep it passable. Saetz alleged that there was no other suitable access to Section 27 and asked for (1) a restraining order directing the appellees to refrain from maintaining the obstructions, (2) an order permitting him to perform necessary maintenance, (3) a judgment abating the nuisance which prevented him from the free use of the section line, and (4) damages in the sum of $5,000.

An order to show cause was issued and affidavits and counter-affidavits were filed in support of and in opposition to the granting of temporary relief pending trial. Although the record shows no disposition, it is presumed that temporary relief was denied.

Heiser and Dvorak filed a separate answer to the complaint, alleging that Saetz failed to state a claim against them upon which relief could be granted. The county commissioners made no answer but, when the matter appeared on the calendar for trial in June 1975, the commissioners moved for summary judgment under Rule 56(b), N.D.R.Civ.P., on the grounds:

"1) That there is no general [sic] issue as to any material fact and that the plaintiff has no cause of action against these defendants;

"2) That all of those acts of these defendants which have been set forth in plaintiff's Complaint on file herein are specifically authorized by Section 24–06–28 of the North Dakota Century Code as amended by the 1975 Session Laws."

Heiser and Dvorak joined in the motion, and Saetz resisted on the ground that genuine questions of fact were at issue and raised the additional question of constitutionality of Section 24–06–28, as amended. No affidavits were filed other than those which relate to the prayer for temporary relief.

Although it was probably unnecessary, as explained in *Newman v. Hjelle,* 133 N.W.2d 549, 553 (N.D.1965), the trial court prepared findings of fact, conclusions of law and ordered that the motion for summary judgment be granted. The findings state:

"1) That pursuant to Chapter 24–07 of the North Dakota Century Code, the Dunn County Commissioners did in December, 1963, discontinue that county highway located between Sections 33 and 34, of Township 142 North, Range 96 West of the Fifth Principal Meridian, in

Dunn County, North Dakota; that subsequent to the discontinuance of said highway, defendants Andrew M. Heiser, Pauline Heiser, George L. Dvorak and Hattie B. Dvorak, as owners of the lands adjoining said section line, erected fences across said section line at various intervals; that during all of said time, access to the section line was provided by said defendants through gates in the fences.

"2) That under the terms of the grant of lands within the State of North Dakota by the Congress of the United States the public was given an easement for travel on all section lines.

"3) That the State of North Dakota can specify and impose upon the public reasonable restrictions in the exercise of the right of travel on public highways within the state."

Upon these findings the trial court based its conclusions: (1) that by the amendment of § 24–06–28, NDCC, the Legislature had determined that gates are not obstructions, (2) that gates do not materially impede the right to travel, and (3) that the fences and gates in this case constitute a reasonable restriction on public use of the section line.

■ No judgment was entered and appellees raise no objection to Saetz's right to appeal from the order. We have said that orders for summary judgment are not appealable [*Gebeke v. Arthur Mercantile Company*, 138 N.W.2d 796, 798 (N.D.1965)], and that where appellant has no right of appeal, this court will dismiss whether the point is raised by appellee or not [*In re Rusch's Estate*, 62 N.D. 138, 241 N.W. 789 (1932)]. Nevertheless, when matters have been fully researched, briefed and argued, and involve the merits of a question which is of significant concern, this court will decide the case on its merits rather than remanding for technical corrections which should have been made before appealing to this court. [*Farmers Cooperative Ass'n v. Cole*, 239 N.W.2d 808 (N.D.1976), and *Kit-*

*telson v. Havener*, 239 N.W.2d 803 (N.D. 1976).]

Saetz states that the only issue to be resolved on this appeal is the propriety of the summary judgment of dismissal under the circumstances of this case. He asks that we consider the constitutional questions raised, and urges that we reverse and remand for a trial.

Appellees argue that: (1) § 24–06–28, NDCC, as amended, is constitutional, (2) Dunn County has the sole authority and responsibility for maintaining county roads, and (3) the appellant has sustained no damage, and all actions by appellees have been in conformance with State law; therefore, summary judgment was appropriately granted.

We agree with Saetz's version—that the only issue is the propriety of the summary judgment of dismissal under the circumstances of this case. However, that question can only be settled after reviewing the issues, if any, that were raised, originally by the complaint, by Heiser and Dvorak's answer, by the return to the order to show cause and affidavits filed therewith, plus the issues, if any, that were raised by the motion for summary judgment, Saetz's resistance thereto, and, finally, the disposition by the trial court in its findings and conclusions.

The complaint alleged (1) that the section line was obstructed by fences and farming operations encroaching thereon, (2) that Dunn County failed to properly maintain the section line, (3) that a nuisance existed which prevented free use of the section line, and (4) that Saetz was damaged to the extent of $5,000.[1]

The only answer ever submitted, that by Heiser and Dvorak, in effect admits all allegations (but denies that a cause of action is stated against them).

The return to the order to show cause and all affidavits in opposition to temporary

---

1. At the time the complaint was filed in March 1974, there may have been some doubt as to whether the section line in question was a public highway and whether fencing on section

lines was tolerated. *Small v. Burleigh County*, 225 N.W.2d 295 (N.D.1974), rehearing denied January 30, 1975, settled these questions.

relief, in effect admit all allegations, but deny that Saetz is entitled to any temporary relief.

The motion for summary judgment, which was not supported by any affidavit, in effect admits all allegations but, at the same time, claims that all actions complained of in the complaint were specifically authorized by the Legislature by the 1975 amendment to § 24–06–28, NDCC.[2]

In resisting the motion for summary judgment, Saetz raised the question of the constitutionality of the 1975 amendment and argued that there were genuine questions of fact at issue.

The findings quoted hereinbefore state the facts as the trial court deemed them material. No one has criticized them on this appeal and we, therefore, accept the findings as being the only material facts and conclude that there is no factual dispute that needs to be tried. We are left then to determine, under Rule 56(c), N.D.R. Civ.P., whether the appellees, as a matter of law, were entitled to a summary judgment.

We then examine the trial court's conclusion of law that by the amendment of § 24–06–28, NDCC, the Legislature had determined that gates are not obstructions, that gates do not materially impede travel, and gates, in this case, constitute reasonable restrictions on travel.

Section 24–06–28, NDCC, with deletions in triple parentheses and additions underlined to show the 1975 amendment, reads as follows:

"24–06–28. Obstruction of section lines prohibited—Exception(((.)))—Certain fences not considered obstructions—Penalty.—No person shall place or cause to be placed any permanent obstruction or stones or rubbish within thirty-three feet of any section line, unless he first shall secure written permission (((in writing))) from the board of county commissioners or the board of township supervisors, as the case may be. Such permission shall be granted only where the topography of the land along such section line is such that in the opinion of the board of county commissioners or board of township supervisors, as the case may be, the construction of a road on the section line is impracticable. The provisions of this section shall not prohibit construction of fences along or across section lines (((not open for travel))) if gateways or cattle guards, constructed pursuant to chapter 24–10, are provided where fences cross the lines, but such fences shall be subject to removal as provided in section 24–06–30. Where an issue arises as to whether the situation is better served by the installation of a gateway or a cattle guard, the ultimate decision will be left to the board of county commissioners or board of township supervisors, as the case may be. The construction of fences pursuant to the provisions of this section shall not be considered an obstruction of section lines and any person who damages any fence or who opens and fails to close any gate constructed under the provisions of this section is guilty of an infraction."

The Legislature has provided us with rules and guidelines for the construction of legislative enactments. Section 1–02–02, NDCC provides that words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. We must assume that precise words were chosen intentionally in the drafting of the amendment to § 24–06–28, NDCC. Section 1–02–39, NDCC, provides:

"If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:

1. The objection sought to be attained.

2. The circumstances under which the statute was enacted.

3. The legislative history.

4. The common law or former statutory provisions, including laws upon the same or similar subjects.

2. Section 1–02–10, NDCC, requires express declaration of retroactive application. No such language is found in Section 24–06–28, NDCC, as amended.

5. The consequences of a particular construction.

6. The administrative construction of the statute.

7. The preamble."

■ Because of the complete inconsistency with those statutes which relate to section lines which are incorporated into interstate, state, county, and township roads, it is quite obvious that § 24–06–28, NDCC, was not intended to permit cattle guards and gateways on such highways, regardless of the status of their improvement and maintenance.

In § 1–02–38, NDCC, the Legislature has directed us to presume that in enacting a statute:

"1. Compliance with the constitutions of the state and of the United States is intended.

2. The entire statute is intended to be effective.

3. A just and reasonable result is intended.

4. A result feasible of execution is intended.

5. Public interest is favored over any private interest."

■ Applying these guidelines we conclude that § 24–06–28, NDCC, as amended, clearly states that, prior to placing any permanent obstruction or stones or rubbish within thirty-three feet of any section line, written permission must be obtained from the county commissioners or township supervisors.[3] From a reading of the entire statute we conclude that this prior written permission applies to fences, gateways, gates, and cattle guards, and that construction thereof is pursuant to Chapter 24–10, NDCC. The permission may be granted only where the topography of the land along such section line is such that the construction of a road on the section line is impracticable.

We encounter some ambiguity in that § 24–06–28 appears to require cattle guards *and* gateways by its reference to Chapter 24–10, and then authorizes the board to determine whether the situation is better served by the installation of a gateway *or* a cattle guard. The question then arises: Did the Legislature intend to authorize installation of gates, closing section lines to free public passage?

■ The legislative history which has been furnished to us in this case indicates that in drafting the amendment to § 24–06–28, the Legislature was fully aware of this court's holding in *Small v. Burleigh County*, 225 N.W.2d 295, 298 (N.D.1974), where we said that the Legislature's belated tolerance of fencing on section lines is not effective to deprive the public of rights dating back to 1871 and 1866, and that the State does not own section line right-of-way but merely holds it as trustee for the public. For this later principle, we relied primarily upon *Wenberg v. Gibbs Township*, 31 N.D. 46, 153 N.W. 440 (1915).

Considering the specific language used and in light of *Small*, we conclude that the Legislature did not intend to violate its trust by tolerating fencing in any form which would effectively deprive the public of its right to free passage over section lines. Counsel for appellees, indicating that he had a direct concern in the drafting of the amendment to § 24–06–28, informs us that the legislative purpose was to accomplish a balancing of the public rights to passage and the rights of the fee owner in the section line.

■ We conclude that the balancing of the rights can only be validly accomplished, without a violation of the trust, by interpreting § 24–06–28 as requiring cattle guards *and* gateways at every point where a fence line intersects a section line, pursuant to the provisions of Chapter 24–10, NDCC. This permits free movement of vehicles over cattle guards and permits the bypass of the cattle guard for livestock movement through an adjacent gateway, which shall include a gate. This construction eliminates the ambiguity created by the phrase in § 24–06–28 relating to the

3. See second *Small* opinion, *Small v. Burleigh County*, 239 N.W.2d 823 (N.D.1976).

penalty for failing to close gates. Gates are accordingly authorized within thirty-three feet of a section line but only in a gateway adjacent to a cattle guard.

This interpretation creates no inconsistency with the statutes on grazing areas (Chapter 36–11, NDCC) referred to by appellees, nor with the State fencing law (Chapters 47–26 and 47–27, NDCC). Likewise, apparent contradictions with other provisions in Title 24, such as §§ 24–01–01, 24–06–30, and 24–12–02, NDCC, disappear.

■ When the trial court granted appellees a summary judgment it misinterpreted the effect of § 24–06–28, NDCC, by failing to require proof (1) that prior approval had been obtained, (2) that the section line in question has a topography which makes construction of a road thereon impracticable, and (3) that the fences in this case comply with Chapter 24–10, NDCC, insofar as cattle guards and gateways are concerned. We reverse and remand for further proceedings consistent herewith, including a trial on the question of damages.

ERICKSTAD, C. J., PAULSON and SAND, JJ., and WM. M. BEEDE, District Judge, concur.

ROBERT VOGEL, J., deeming himself disqualified did not participate; WM. M. BEEDE, Judge of the Fifth Judicial District, sitting in his place.