GRACE LUTHERAN CHURCH, a corporation (Grace Lutheran School),
Petitioner and Appellee,

v.

NORTH DAKOTA EMPLOYMENT SECURITY BUREAU and North Dakota Unemployment Compensation Division,
Respondents and Appellants.

Civ. No. 9719.

Supreme Court of North Dakota.

June 20, 1980.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for petitioner and appellee; argued by J. Gerald Nilles, Fargo.

Michael J. Wilma, Sp. Asst. Atty. Gen., Bismarck, for respondents and appellants.

PEDERSON, Justice.

This is an appeal by the Unemployment Compensation Division of the North Dakota Employment Security Bureau [1] from the decision of the district court that Grace Lutheran School, a division of Grace Lutheran Church, is not subject to the provisions of the North Dakota Unemployment Compensation Law. We affirm the judgment of the district court (§ 28–32–21, NDCC) and reverse the determination of the North Dakota Employment Security Bureau (§ 28–32–19, NDCC).

This case stems from changes made in the federal and state unemployment compensation laws. Briefly, an exemption for employees of elementary and secondary schools was repealed and a directive from the Secretary of Labor was issued that the new coverage included employees of *church*-related schools. Grace Lutheran School was notified that it was subject to the unemployment compensation tax. Because this case revolves around several sections of the Unemployment Compensation Laws, a brief overview of unemployment compensation legislation follows.[2]

Unemployment compensation had its beginning in the depression of the 1930's with its concurrent high levels of unemployment. Congress enacted the Social Security Act of 1935 to encourage states to adopt unemployment compensation statutes to alleviate some of the hardships caused by the depression. Title IX of the Act levied an unemployment wage tax on "for profit" employers with eight or more employees,[3] but al-

---

1. See Ch. 522, S.L. 1979, Job Service North Dakota.

2. For a more detailed discussion of the history of unemployment compensation legislation see Davis, "Bringing Christian Schools Within the Scope of the Unemployment Compensation Laws: Statutory and Free Exercise Issues", 25 Villanova L.Rev. 69, No. 1 (1979–80).

3. Social Security Act of 1935, Pub. L. No. 271, Title IX, § 907(a) and (c), 49 Stat. 642–43 (1935).

lowed covered employers a credit against this federal tax liability for up to 90% of the employer's contributions to certified state unemployment funds.[4] All states enacted unemployment compensation legislation by 1937. In order to meet the requirements for federal certification, state enactments were, what has been called, "mirror images" of the federal legislation. Four years after the passage of the Social Security Act, Title IX was reenacted as the Federal Unemployment Tax Act (FUTA).

From the mid-1950's to the present, a steady expansion of unemployment compensation coverage has occurred.[5] For purposes of this case, the more significant expansion started in 1970 when the states were required to extend coverage to employees of non-profit organizations.[6] However, § 3309(b) of FUTA continued to permit the states to exclude from coverage, services performed:

"(1) in the employ of

(A) a church or convention or association of churches, or

(B) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches;

(2) by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order;

(3) in the employ of a school which is not an institution of higher education."

In 1976, Congress amended § 3309 by deleting subsection (b)(3), thus eliminating FUTA's general exclusion for elementary and secondary schools. In response to this amendment, the North Dakota Legislature made a number of changes to conform the state unemployment law to the federal law. Subsection (3) of § 52–01–01(13)(h), NDCC, the "mirror image" of subsection (3) above, was deleted.[7] Section 52–01–01(13)(h)(1) and (2) remains unchanged and remains identical to the federal statute § 3309(b)(1) and (2) quoted above.

It was not until 1978 that the United States Secretary of Labor issued an opinion letter[8] officially stating for the first time that *church* -related elementary and secondary schools were covered by FUTA.[9] In response to this opinion letter, a directive was issued to all state employment agencies requiring the state agencies to assess unemployment compensation taxes against church schools.

On April 14, 1978, Grace Lutheran School, a church school owned and operated by Grace Lutheran Church, was notified that it was subject to coverage under the North Dakota Unemployment Compensation Law and that it had the option to pay the unemployment tax on a percentage basis or on a reimbursement basis. Grace Lutheran School objected on the ground that its teachers were employees of Grace Lutheran

---

4. Only payments made into *certified* state funds entitle the payor to a reduction of this FUTA liability. 26 U.S.C. § 3304(a) and (c).

5. For example, in 1954 Congress extended coverage to employers with *four* or more employees and enacted an unemployment compensation program for federal employees. See Pub. L. No. 767, 68 Stat. 1130.

6. 26 U.S.C. § 3304(a)(6). See Employment Security Amendments Act, Pub. L. No. 91–373, 84 Stat. 695. Pursuant to 26 U.S.C.A. §§ 3301 and 3306(c) (1976), non-profit organizations are exempt from paying *federal* unemployment insurance tax even though the federal government requires the states' programs to cover such organizations.

7. Ch. 459, § 4, S.L. 1977.

8. See *Independent Baptist Church, Etc. v. State of Tenn.*, 468 F.Supp. 71, 74 (E.D. Tenn. 1978), for a summary of the text of the Secretary of Labor's opinion letter.

9. It is interesting to note that an administrative law judge, in a memorandum to the Secretary of Labor, noted that immediately after the 1976 amendments to FUTA were passed the Labor Department issued two non-public memoranda to the states indicating that church-school employees were still *excluded* from FUTA under § 3309(b)(1). See footnote 121, 25 Villanova L.Rev. 69 at 84.

Church. Even though this is conceded by the Bureau and should have been included in findings by the Bureau, Grace Lutheran School was nevertheless required to and did elect the reimbursement method, but appealed from the determination that it was covered. A hearing was conducted before the Unemployment Compensation's Chief Appeals Referee which resulted in a determination that Grace Lutheran School was subject to the North Dakota unemployment compensation law. This decision was appealed to the North Dakota Employment Security Bureau which affirmed the decision of the Unemployment Compensation Division.

Thereafter, Grace Lutheran Church filed a petition for judicial review of the Bureau's decision in Burleigh County District Court. On October 11, 1979, a judgment was rendered which reversed the Bureau's decision and held that the employees of Grace Lutheran School were not subject to the North Dakota Unemployment Compensation Law. The North Dakota Employment Security Bureau appealed this decision to the Supreme Court.

It is the Bureau's position that it was the intention of Congress (and the North Dakota Legislature) to cover employees of *all* elementary and secondary schools, including church-related schools, when § 3309(b)(3) (and § 52–01–01(13)(h)(3), NDCC) was deleted and that it is constitutionally permissible to extend unemployment compensation coverage to church-related schools.

It is Grace Lutheran Church's first contention that by deleting the subsection (3) exemption for elementary and secondary schools, public and private schools are now covered, but that employees of Grace Lutheran School are still exempt under § 3309(b)(1)(A) (and § 52–01–01(13)(h)(1)(a), NDCC), which provides an exemption for service performed in the employ of "a church or convention or association of churches." The trial court agreed with this contention. Secondly, Grace Lutheran Church contends that if Congress or the

North Dakota Legislature intended that church schools be covered, the statute is an unconstitutional infringement on the church's First Amendment rights.

■ As a preliminary matter, we note that as this case involves an administrative agency, the Administrative Agencies Practice Act (Chapter 28–32, NDCC) applies. Section 28–32–01, NDCC, defines an administrative agency to include any bureau having statewide jurisdiction and authority to make a determination which has the force and effect of law and which by statute is subject to review by the courts. The organization of the Employment Security Bureau is set out in Title 52, NDCC. Section 52–04–17 provides that the Unemployment Compensation Division may make administrative determinations with respect to whether or not an employer is covered under the unemployment compensation laws, hence it has statewide jurisdiction and authority to make determinations having the force of law. Section 52–06–27 provides for judicial review of decisions of the Employment Security Bureau.

■ The judicial review provisions of Chapter 28–32, NDCC, are not exclusive. Special statutes prevail if in conflict with the more general provisions of Chapter 28–32. *Evanson v. Wigen*, 221 N.W.2d 648 (N.D. 1974). However, in the instant case it appears that no such conflict exists. Both § 52–06–27 and § 28–32–15 provide that an appeal is to be taken within 30 days after notice of the decision of the agency. Section 28–32–19 deals with the court's scope of review on appeal. In cases where the facts are not in issue,[10] the court is to affirm the decision of the agency unless it finds:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant."

Review by the supreme court is governed by this same standard. See § 28–32–21, NDCC.

---

10. It could be contended that there is a conflict as to the correct standard for a court to apply in cases involving fact questions. See § 52–06–27 and § 28–32–19(5).

Thus, the threshold questions on this appeal involve a determination of whether or not the agency's decision that church schools are covered by unemployment compensation legislation is in accordance with the law and, if so, whether or not that decision violates the constitutional rights of Grace Lutheran Church.

## I. STATUTORY CONSTRUCTION

■ Generally, legislative intent must first be sought from the language of the statute. *Apple Creek Tp. v. City of Bismarck*, 271 N.W.2d 583 (N.D. 1978). "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1–02–05, NDCC. Repeals by implication are not favored. *First American Bank & Trust Co. v. Ellwein*, 198 N.W.2d 84, 98 (1972).

In repealing the exemption for services performed "in the employ of a school which is not an institution of higher education," it is clear that public and private (non-church) elementary and secondary schools were covered by the unemployment compensation legislation. It is contended by the Bureau that *church* -operated elementary and secondary schools are covered. The issue is whether or not they are covered.

First of all, it is Grace Lutheran Church's contention that by leaving intact § 3309(b)(1) when it repealed (b)(3), Congress intended that church-operated schools could still qualify for an exemption. Subsection (A) of § 3309(b)(1) exempts all services performed in the employ of a church or an association of churches. It is arguable that a school such as Grace Lutheran School that is not separately incorporated and whose teachers have employment contracts directly with the church would qualify for an exemption under this subsection.[11]

■ Secondly, Congress, in deleting § 3309(b)(3) expressed no *specific* intent to require states to tax Christian schools. A recent Supreme Court decision states that in the absence of a clear expression of affirmative Congressional intent, an administrative agency may not assert jurisdiction over an organization if doing so may tend to jeopardize the religious freedoms of the organization. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). See also *Owen v. City of Independence*, —— U.S. ——, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).[12]

Therefore, since Congress made no specific, express reference to church schools when deleting § 3309(b)(3), and since a persuasive argument can be made that church schools, such as Grace Lutheran, are excluded under § 3309(b)(1), the required "clear expression of an affirmative intention of Congress" that church schools should pay unemployment compensation tax appears to be lacking.[13]

■ Applying the same rules of construction in considering the repeal of § 52–01–01(13)(h)(3), NDCC, we reach the same conclusion. Without pointing out any ambigui-

---

11. A church school whose teachers are not employed directly with the church school may still qualify for an exemption under Subsection (B) of § 3309(b)(1). This section exempts services performed in the employ of an organization which is (1) operated primarily for religious purposes, and (2) operated, controlled, or principally supported by a church or convention or association of churches. As to the first requirement, the supreme court has characterized church schools as being operated primarily for religious purposes. *NLRB v. Catholic Bishop of Chicago, supra; Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975); *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). As to the second requirement, it would be necessary for the church school to show that it is administered by church officials, supported by church funds, that the teachers are members of the parent church, etc.

12. In cases where a tradition is rooted in the common law and is supported by strong policy reasons, "Congress would have specifically so provided had it meant to abolish the doctrine." *Owen v. City of Independence, supra.*

13. Although several lower courts in other states have reached the same conclusion (see cases cited at footnote 116 of 25 Villanova L.Rev. 69 at 84), the South Dakota Supreme Court, in the case of *Matter of Northwestern Lutheran Academy*, 290 N.W.2d 845 (S.D. 1980), reached the contrary conclusion.

ty in the applicable statutes, the Bureau urges us to seek the intent of the Legislature from extrinsic aids. It points out that before the passage of Senate Bill 2213 [S.L. 1977, Ch. 459, § 4, which repealed § 52–01–01(13)(h)(3)] in a Senate committee hearing on Industry, Business and Labor, the committee members were advised that the bill would provide "protection for all state, and local governmental employees, *elementary and secondary school employees* and employees of municipalities and *parochial schools.*" [Emphasis added.] Minutes of January 24, 1977, Testimony Senate Industry, Business and Labor Committee of North Dakota Legislature. Testimony from a House Committee hearing was similar: "Mary College is now covered and the *parochial schools will be covered.*" [Emphasis added.] Minutes of February 23, 1977, Testimony House Industry, Business and Labor Committee of North Dakota Legislature.

■ Even though the North Dakota Legislature was informed that church schools would be covered by unemployment compensation with the repeal of § 52–01–01(13)(h)(3), we conclude that the result was not accomplished. The clear and unambiguous language of § 52–01–01(13)(h)(1)(a) provides an exemption for service performed in the employ of "a church or convention or association of churches." The removal of § 52–01–01(13)(h)(3) did not ipso facto remove the other exemption. Furthermore, it is a long-established rule of law that if a statute is susceptible of two meanings, and one of those two meanings would make the statute invalid, the one which makes it valid prevails. See 2A Sands, Sutherland Statutory Construction (4th ed. 1972), § 45.11, at 33; *State v. Julson,* 202 N.W.2d 145 (N.D. 1972); *Wallentinson v. Williams County,* 101 N.W.2d 571 (N.D. 1960); and *Marks v. City of Mandan,* 70 N.D. 434, 296 N.W. 34 (1940); all cited in *Kottsick v. Carlson,* 241 N.W.2d 842 (N.D. 1976).

## II. CONSTITUTIONAL QUESTIONS

■ Only if we were to accept the contentions of the Bureau that church schools in North Dakota are covered by unemployment compensation as a result of the repeal of § 52–01–01(13)(h)(3), could we look to see if requiring coverage violates the constitutional rights of Grace Lutheran Church. If it is possible to do so, this court avoids interpretations of statutes which place the statute in disharmony with the Constitution. *North American Coal Corp. v. Huber,* 268 N.W.2d 593 (N.D. 1978). Occasionally, however, because of public interest, we express views on issues when judicial economy indicates that issues which have been thoroughly briefed and argued should be disposed of. See, generally, *Saetz v. Heiser,* 240 N.W.2d 67, 70 (N.D. 1976). Accordingly, we will discuss the constitutional disharmony that would result from our sustaining the interpretation urged by the Bureau.

The First Amendment [14] of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." Thus, it prohibits the government from making laws which either (1) foster the establishment of a religion or (2) prohibit the free exercise thereof. Both the establishment clause and the free exercise clause apply to the states under the Fourteenth Amendment. *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, 168 A.L.R. 1392 (1946).

■ Although the scope of the establishment clause of the First Amendment is not precisely drawn, we know that it does more than forbid a state church, and that it does less than forbid every action by the government that affords a benefit to a religion. *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952). In *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the court described the scope and main concerns of the establishment clause as follows:

"Its author did not simply prohibit the establishment of a state church or a state

---

14. See also Section 4, Constitution of North Dakota.

religion . . . Instead they commanded that there should be 'no law *respecting* an establishment of religion.' A law may be one 'respecting' the forbidden objective while falling short of its total realization. . . .

"In the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.' *Walz v. Tax Commission*, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697, 701 (1970)." 403 U.S. at 612, 91 S.Ct. at 2111.

This last aspect—concern over active governmental involvement—was further defined in *Walz, supra*, as follows:

"Determining that the legislative purpose . . . is not aimed at establishing, sponsoring, or supporting religion does not end the inquiry, however. We must also be sure that the end result—the effect—is not an excessive government entanglement with religion." 397 U.S. at 674, 90 S.Ct. at 1414.

To analyze whether or not a statute violates the establishment clause three tests must be applied. *Lemon v. Kurtzman, supra*.

"First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education v. Allen*, 392 U.S. 236, 243, 88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060, 1065 (1968); finally, the statute must not foster 'an excessive governmental entanglement with religion.' *Walz, supra*, at 674, 90 S.Ct. at 1414, 25 L.Ed.2d at 704." 403 U.S. at 612–613, 91 S.Ct. at 2111.

If an affirmative response is possible for all three tests, the statute does not violate the clause.

The first two tests present no problem in the instant case. Extending unemployment compensation to elementary and secondary schools has a secular purpose, i.e., to avoid hardships for people temporarily without employment, and affords no basis for concluding that the legislative intent was to advance or inhibit religion. It is the last area—avoiding excessive governmental entanglement with religion—which is in issue here.

The Supreme Court has held that programs which require constant state surveillance or supervision to police them will not be tolerated. *Wolman v. Walter*, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977); *Tilton v. Richardson*, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971); *Lemon v. Kurtzman, supra; Walz v. Tax Commissioner, supra; Everson v. Board of Education, supra*. In *Lemon*, a case involving grants to parochial schools for salaries of teachers of secular subjects, statutes providing for the grants were held to violate the establishment clause as fostering excessive entanglement in view, inter alia, of (1) the religious purpose and operation of church-related elementary and secondary schools, (2) the necessity of state surveillance to insure that teachers, who are subject to control by the religious organization, observed the restrictions as to purely secular education, and (3) the necessity of the state's examination of the parochial school's financial records to determine which expenditures were religious and which were secular.

These same problems appear when applying unemployment compensation legislation to Grace Lutheran Church. First of all, the church school has a religious purpose, i.e., to educate its youth in accordance with the "confessional standards" of the congregation.

Secondly, it will require extensive state surveillance to enforce the program. For example, in the directive that was issued to all state employment agencies, the states were advised that if an employee performs both non-exempt and exempt services during a single employment period, and more than one-half of the services were exempt, "then none of the services of such employee for such period shall be deemed to be employment." In other words, if employment

records for any period show that an employee was engaged in religious training services more than secular training services, that employee would not be covered under the unemployment compensation law. Thus, in the case of a teacher who is employed by a church school (non-exempt) and who also performs religious duties for the church (exempt), the state agency will have to conduct extensive audits in order to determine whether or not the employee has spent more than one-half of his time on purely religious activity. This kind of state inspection and inquiry will also require extensive records, and "entails a pervasive monitoring of these church agencies by the secular authorities." *Lemon v. Kurtzman,* *supra,* 403 U.S. at 627, 91 S.Ct. at 2118 (Douglas, J., concurring).

An equally disturbing problem arises where an employee seeks benefits, as the agency will have to determine whether or not the decision of the church school to fire or lay off the employee was justified under the "good cause" standard. The teachers employed by Grace Lutheran Church are hired partially on the basis of religious and moral qualifications and are required by contract to teach in accordance with the "confessional standards" of the Lutheran Church. Thus, disputes may arise where the church dismisses an employee for failure to teach according to the religious tenets of the church. The employee may contend that the real reason he or she was dismissed was due to budgetary concerns. In such event, the state agency would have to determine whether or not the teacher did, in fact, fail to adhere to the religious tenets of the church. This is the type of entanglement prohibited by the First Amendment to the Constitution.

These factors support the conclusion that the end result of including church schools in unemployment compensation legislation raises serious questions as to excessive governmental entanglement with religion. Accordingly, we avoid the interpretation which creates such disharmony.

The judgment of the district court is affirmed and the determination of the North Dakota Employment Security Bureau is reversed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.