**Albert BACKHAUS, Plaintiff and Appellant,**

v.

**Neil RENSCHLER and Delores Renschler, Defendants and Appellees.**

**Civ. No. 9892.**

Supreme Court of North Dakota.

April 3, 1981.

Frank J. Wikenheiser, Linton, and Wheeler, Wolf, Peterson & McDonald, Bismarck, for plaintiff and appellant; argued by Albert A. Wolf, Bismarck, and Frank J. Wikenheiser, Linton.

Schlosser & Schmitz, Bismarck, for defendants and appellees; argued by Orell D. Schmitz, Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal by the plaintiff, Albert Backhaus, from the judgment of the District Court of Emmons County, dated July 11, 1980, dismissing Backhaus' action against the defendants, Neil and Delores Renschler. In his complaint, Backhaus sought to establish that a public road had been obtained by prescription over the Renschler's property under Section 24–07–01, N.D.C.C., which provides:

"*24–07–01. Public roads by prescription.*—All public roads and highways within this state which have been or which shall be open and in use as such, during twenty successive years, hereby are declared to be public roads or highways and confirmed and established as such whether the same have been laid out, established, and opened lawfully or not."

In its memorandum opinion, the district court made the following succinct statement of fact which we quote, in part, as an accurate statement of the record in this case:

"This land lies in Emmons County near the Missouri River. It is pastureland and at all times pertinent herein has been fenced. On the east side of the fence is a gate. The purpose of the gate was to keep cattle within the pasture. . . .

"This field does not adjoin a public highway of any kind, but there was a trail or road that followed section lines up to the gate. Thereafter the trail or road meandered across the defendants' [The Renschlers'] land and led to the river bottoms. Various persons used this method of access when they wished to hunt or fish in the bottoms. Some years ago there was a farmstead located west of the pasture, and the person residing there sold produce, and people would use this road to drive to and from the farmstead for the purpose of making such purchases."

The district court determined that Backhaus had failed to establish that the use of the road was adverse under a claim of right for the prescriptive period rather than a use only by permission of the landowners. Consequently, the district court concluded that

a public road by prescription had not been established under Section 24–07–01, N.D. C.C., and the court dismissed Backhaus' action.

The sole issue for this Court to determine on appeal is whether or not the district court erred in its conclusion that Backhaus failed to establish a public road by prescriptive use under Section 24–07–01, N.D.C.C.

██ The party asserting the establishment of a public road or highway by prescriptive use under Section 24–07–01, N.D. C.C., has the burden of proving the same by clear, convincing, and satisfactory evidence. *Trautman v. Ahlert*, 147 N.W.2d 407 (N.D. 1966). In *Berger v. Berger*, 88 N.W.2d 98 (N.D.1958), this Court set forth the fundamental requirements for the establishment of a public road or highway by prescription:

"To establish a highway by prescription, there must have been general, continuous, uninterrupted, and adverse use of the same as such by the public under a claim of right, for a period equal to that for the limitations of real actions.

\* \* \* \* \* \*

"Mere user of land by the public as a highway is insufficient of itself to establish a highway by prescription or long use. The user must be adverse and hostile to the rights of the owners; and mere travel by the public does not of itself constitute adverse use of the property by the public. Regardless of how long it is continued, a user by license or permission of the owner of the land sought to be impressed with the public easement of travel is not adverse and affords no basis for prescription." 88 N.W.2d at 100.

The following statement by this Court in *Berger, supra*, is especially relevant in view of the factual circumstances of the instant case:

"It must be conceded that placing obstructions across a road, such as a gate, is a strong indication that the use by others is permissive only, and that erection of a gate or gates across the road tends to evidence an intention on the part of the owner to assume and assert ownership and possession of the land over which the road runs." 88 N.W.2d at 102.

Quoting approvingly from *Sprow v. Boston & A. R. Co.*, 163 Mass. 330, 339, 39 N.E. 1024, 1025 (1895), this Court concluded in *Berger, supra* :

" 'If all the evidence which was introduced was equally consistent with the view that the uses relied on were of the latter character, (permissive use), the plaintiff failed to sustain the burden of proof resting upon him to show a use under a claim of right.' " 88 N.W.2d at 103.

██ Backhaus asserts that the road in question has been adversely used by the public since 1928. However, there is testimony in support of the district court's determination that at all times pertinent to Backhaus' claim the property was fenced with a gate located across the road or path. Neil Renschler testified that he has lived in the area since 1924 and that "ever since I can remember" the property has been fenced. Fred Heer, a resident of Emmons County, testified that he first became aware of the road in question in 1930 or 1932 and that the property "has always been fenced." Herbert Ketchum, Albert Backhaus' brother-in-law, testified that he first became aware of the road in 1938 and that the property was fenced with a gate across the road during the entire time that he used the road. Albert Kiemele testified that his parents bought the property in question during the 1930's and that prior to that time they rented the property for a while. He testified that for as long as he could remember the property was fenced and that the gate across the road has remained in the same location over the years.

The record also contains other testimony which supports the district court's determination that the landowners exercised dominion and control over the property through which this roadway or path was located and that the public use of such path was by permission only rather than under a claim of right.

Freddy Weber, a blade operator for Emmons County testified with regard to the control exerted by Mr. Kiemele as a previous owner of the property in question:

"Q. As a matter of fact, Mr. Weber, isn't it true that when you were in the process of doing this grading that the landowner came over and stopped you?

"A. Not while I was in the process. It was right after.

"Q. Mr. Kiemele came over and talked to you, didn't he?

"A. Yes, he did.

"Q. He asked you what in the world you were doing over in there?

"A. Yes, he did.

"Q. Did he make any statements to you about who told you to do it or anything? Did he ask you those questions?

"A. Well, yes.

"Q. He told you to get out, didn't he?

"A. Well, he told me we could travel it but not blade it.

"Q. He said to get out with your blade and things?

"A. Right.

"Q. Is that the last time you have been down there, sir?

"A. Yes."

By his own testimony, Albert Backhaus indicated that blading of the road was performed with the permission of landowner Kiemele:

"Q. You never had any difficulty with Mr. Kiemele about that road whatsoever?

"A. Well, just when Freddie Weber bladed it, he hit some grass inside the gate and that's what, *but otherwise they always let us blade it.*" (Emphasis added.)

Murray Lawler, a County Commissioner for Emmons County from 1959 to 1972, also testified that permission was obtained prior to grading the road in question:

"Q. Mr. Lawler, when you gave permission to send the grader down there, did you feel that that was a public road at that time?

"A. I never gave it a thought, but I requested Mr. Kiemele's permission before we would send the blade in.

"Q. Is it normal procedure for a County Commissioner to send blades with or without permission on private roads?

"A. It has been done in the past, yes."

Albert Kiemele testified that he farmed the property now owned by the Renschlers from 1950 until 1968 and that on two occasions he locked the gate through which the road in question passes:

"Q. During the 1960's did you ever have occasion to lock that gate?

"A. Twice.

"Q. Will you tell the Court what led up to the locking of the gate?

"A. The first time I locked it I was ordered to lock it by my dad. That was in dispute over some bottom land. The second time I locked it was when the County Commissioner sent the maintainer in there and I locked it up."

Neil Renschler testified as follows with regard to his control over the property and the road in question:

"A. The son Backhaus, Arlis, he was down fishing one time and left the gate open on several occasions. We wired it shut and later on he said, 'Well, I just want you to know it was me, not the old man'. I said, 'Did you get the message?' He said, 'I didn't see no cattle around. If the gate was shut, okay, I will close it.' "

Upon examining the entire record in this case, including the foregoing testimony, we conclude that the district court's finding of fact, that the use of the road was with permission of the landowners rather than under a claim of right, was not clearly erroneous. Consequently, we conclude that the district court did not err in its determination that Backhaus failed to meet his burden of proving an adverse use of the road by the public under a claim of right for the prescriptive period.

The Renschlers have made a motion before this Court to strike certain items placed in the appendix by Backhaus which, they assert, relate to events that took place subsequent to the entry of the district court's judgment. Having examined the questioned materials, we conclude that they are irrelevant to the issues raised before this Court, and, accordingly, we have totally disregarded these materials in reaching our

decision. Therefore, it is unnecessary to rule on the Renschler's motion.

In accordance with this opinion, the judgment of the district court is affirmed.

SAND, PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

This should have been a "classic" Rule 52(a) case. The case was tried to the court without a jury and there was a controlling fact question—was the public use of the road adverse and for a sufficient time period to make § 24–07–01, NDCC, applicable? My concern starts with the absence of a special finding of fact on this controlling fact question.

The trial court prepared and filed a memorandum opinion and "if an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." Rule 52(a), NDRCivP. The memorandum opinion ended with the following paragraph:

"I conclude that the plaintiff has failed to establish, either by clear and convincing evidence or by a preponderance of the evidence, that the road in question was being used under claim of right for the required period. Accordingly, I conclude that easement by prescription has not been obtained, and that the complaint should be dismissed. Counsel for the defendant will prepare the appropriate concluding documents."

No findings of fact or conclusions of law were incorporated into the "appropriate concluding documents." The conclusion by the trial court in the memorandum opinion is very comparable to that made by the trial court in *Struchynski v. Decker*, 194 N.W.2d 741 (N.D.1972), which we said was inadequate. I recognize the futility of my efforts to upgrade findings of fact so that we can, without reservation, give trial court findings the presumption of correctness that they deserve under Rule 52(a). It is an ideal which may never be reached and I acknowledge that there will be some waste of judicial effort involved when the result is presumptively an affirmance of the judg-

ment anyway. If there is a reversal of the judgment indicated, however, I can foresee serious questions.

One additional matter requires my comment. In the succinct statement of fact quoted by the Chief Justice from the trial court's memorandum opinion is a reference to "a trail or road that followed section lines up to the gate." It is by no means clear to me that Renschler's fence or gate does not obstruct the section line right-of-way. In *Small v. Burleigh County*, 225 N.W.2d 295, 298 (N.D.1974), we said that "belated tolerance of fencing on section lines is not effective to deprive the public of rights . . . ." See also, *Saetz v. Heiser*, 240 N.W.2d 67 (N.D.1976). It should be understood that we are not at this time reversing our holdings in *Small* or *Saetz*.