**LeRoy AMES, Petitioner and Appellant,**

v.

**ROSE TOWNSHIP BOARD OF TOWN-SHIP SUPERVISORS, and Donald Ackerman, Richard Ackerman and Bruce Ackerman, Respondents and Appellees.**

**Civ. No. 920392.**

Supreme Court of North Dakota.

July 1, 1993.

---

Terence J. Paulson of Paulson and Merrick, Jamestown, for petitioner and appellant.

Lawrence P. Kropp, Kropp Law Office, Jamestown, for respondents and appellees Donald Ackerman, Richard Ackerman and Bruce Ackerman.

James A. Reisnour of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for respondent and appellee Rose Tp. Bd. of Tp. Supervisors.

VANDE WALLE, Chief Justice.

LeRoy Ames appealed from an amended declaratory judgment holding that certain cattle guards and gateways constructed across section lines were in compliance with North Dakota law, and thereby denying his amended petition for a writ of man-

damus which sought to compel their removal. We affirm.

Ames has an interest in certain non-contiguous real estate located in Rose Township, Stutsman County, North Dakota, on which he conducts a farming and ranching operation. The disjointed nature of Ames's holdings requires him to utilize public highways to transport his farming and ranching equipment from parcel to parcel.

Donald, Richard, and Bruce Ackerman have an interest in certain real estate located between Ames's holdings. One such parcel in which the Ackermans have an interest straddles a section line. The Ackermans placed fences across the section line to contain the cattle they were raising on their feedlot operation.

Ames attempted to travel this section line with his farm equipment to reach his separated land holdings. The Ackermans's fences prevented his travel. Ames petitioned the trial court for a peremptory writ of mandamus commanding the Rose Township Board of Township Supervisors [the Board] to notify the Ackermans to remove the fences that were across and within 33 feet of the section line. The writ was issued requiring the Board to notify the Ackermans to remove the fences. The Board gave the required notice and the Ackermans complied. *See* NDCC § 24–06–30.

Thereafter, the Ackermans applied in writing to the Board for permission to erect three cattle guards and gateways across the section line. The cattle guard openings were to be 12–feet wide with adjoining gateways at least 24–feet wide. The Board approved the application, and the cattle guards and gateways were constructed and installed in compliance with the application's approved specifications.

Ames discovered that not all of his farm equipment was able to pass through the 12–foot cattle guard openings and must therefore be re-routed through the gateways. In addition, one piece of his farm equipment was too wide to pass through the 24–foot gateways without being folded or placed lengthwise on a transport.

Ames sought and received an order from the trial court permitting him to amend his original petition for a writ of mandamus to seek declaratory relief pursuant to Chapter 32–23, NDCC, and to add the Ackermans as additional parties. The amended petition alleged that the approved cattle guards and gateways do not comply with North Dakota law in that their width restricts his free passage with his farm equipment along the section line in violation of section 24–10–02, NDCC. The petition alleged an entitlement to a writ of mandamus that would command the Board to order the Ackermans to bring the cattle guards and gateways into compliance with the statute, or to order the Ackermans to remove the cattle guards and gateways. After hearing, the court issued its findings of fact, conclusions of law, and order for declaratory judgment, holding that the cattle guards and gateways were in compliance with North Dakota law, and denying Ames's amended petition for a writ of mandamus.

The dispositive issue on appeal is whether the cattle guards and gateways comply with North Dakota law.

In 1866, the United States Government made an offer of section line easements on public land, and that offer was later accepted by the Dakota Territory and North Dakota State Legislatures. 1870 Dak. Terr.Laws ch. 33; 1877 Political Code 29–27; *Walcott Township v. Skauge,* 6 N.D. 382, 71 N.W. 544 (1897). *See also* 43 USC § 932 (Repealed) Historical Note, and § 1701, Historical Note, Savings Provisions. These easements were granted for the benefit of the public and have not been surrendered. NDCC § 24–07–03; *State v. Hafner,* 499 N.W.2d 596 (N.D.1993); *Small v. Burleigh County,* 225 N.W.2d 295 (N.D. 1974); *Huffman v. West Bay Township,* 47 N.D. 217, 182 N.W. 459 (1921); *Northern Pacific Ry. Co. v. Lake,* 10 N.D. 541, 88 N.W. 461 (1901). Section lines are public roads, NDCC § 24–07–03, *Hafner, supra,* and currently there is a public easement of 33–feet on either side of a section line to be used for travel. NDCC § 24–06–28(1).

Those individuals who had an interest in and ran livestock in adjacent land parcels

which straddle section lines formerly had to fence each parcel separately, thus physically separating the adjacent parcels, in order to keep the section lines free and clear for public travel. In response to cattle and grazing concerns of the expense and inconvenience of this double fencing, the legislature adopted provisions which allowed those who have an interest in adjacent parcels of land which straddle section lines to fence over the section lines, thus eliminating the need for double fencing. *See* Testimony on House Bill 1129 before the House Agriculture Committee, January 14, 1977; Testimony on House Bill 1129 before the Senate Agriculture Committee, February 10, 1977. Section 24-06-28, NDCC, as amended in 1977, prohibits the obstruction of section lines except when cattle guards are allowed:

"*Obstruction of section lines prohibited—Exception—Certain fences not considered obstructions—Penalty.*

1. No person may place or cause to be placed any permanent obstruction, stones, or rubbish within thirty-three feet [10.06 meters] of any section line, unless written permission is first secured. . . .

2. Subsection 1 may not be construed to prohibit construction of fences:

. . . . .

b. Across section lines which have not been closed pursuant to section 24-07-03 if cattle guards are provided in accordance with chapter 24-10 where fences cross the section lines.

3. The construction of fences pursuant to subsection 2 may not be considered an obstruction of section lines and any person who damages any fence or who opens and fails to close any gate constructed under subsection 2 is guilty of an infraction."

Section 24-10-02, NDCC, delineates the specifications for constructing cattle guards:

"*Cattle guards—Construction—Maintenance—Effect.* Before any cattle guard and gateway may be erected across any highway or section line as authorized in section 24-10-01, the board of county commissioners or board of township supervisors, as the case may be, shall approve written specifications of the cattle guard and gateway. Specifications approved by the board of county commissioners must be filed with the county auditor and specifications approved by the board of township supervisors must be filed with the township clerk. The specifications must include requirements for warning signs to be placed approximately three hundred feet [91.44 meters] from and plainly visible to persons approaching the cattle guard upon the highway or section line. A cattle guard must be so constructed as to permit the passage of motor vehicles through and over the same. No cattle guard may be erected upon any highway or section line unless there also is provided adjacent thereto an ample gateway in which must be erected a gate which may be opened easily and closed by the public. The person who applied for permission to erect the cattle guard shall maintain the cattle guard and gateway, unless application is otherwise assigned. Within the limits of an enclosure so completed by authorized cattle guards erected in accordance with such specifications, livestock must be permitted to run at large without liability for being upon the highway or section line."

If a section line is to be fenced, section 24-10-02, NDCC, requires both a cattle guard and gateway to be constructed across the section line. *Saetz v. Heiser*, 240 N.W.2d 67 (N.D.1976). A cattle guard is a structure placed on the ground over which cattle are unable to pass because of the construction of the guard which prevents livestock from gaining a foothold. As a result, a cattle guard prevents livestock from escaping while still allowing unfenced access to the section line for those vehicles which are light enough and narrow enough to traverse the guard. Testimony at the hearing on the petition for the writ of mandamus indicated that cattle guards used for similar purposes are commonly twelve-feet wide. A gateway is located adjacent to the cattle guard and is, in

essence, merely a gate which must be constructed so as to be easily opened and closed by the public. A gateway is used to move livestock from parcel to parcel—as they cannot pass over the cattle guard—and similarly used by those vehicles which are too wide and heavy to pass over the cattle guard.

Any cattle guard which is erected upon a section line "must be so constructed as to permit the passage of motor vehicles through and over the same." NDCC § 24–10–02. Claiming that all of his motorized farm equipment are "motor vehicles" under the meaning of section 24–10–02, NDCC, Ames alleges that the cattle guards and gateways are in violation of North Dakota law because his access to the entire 66-foot public easement is blocked, and he must disassemble or transport some of his farm equipment in order to travel over the cattle guard or through the gateway, thus restricting his right of travel with a motor vehicle.

In support of his contention that all of his motorized farm equipment are "motor vehicles," thus requiring a cattle guard to "be so constructed as to permit" their passage, NDCC § 24–10–02, Ames cites to section 39–01–01(38), NDCC, which defines "motor vehicle" as "every vehicle which is self-propelled, every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails...." The word "vehicle" is defined in section 39–01–01(87), NDCC, as "every device in, upon, or by which any person or property may be transported or drawn upon a public highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

The Ackermans and the Board respond that the cattle guards are wide enough to accommodate the permitted width of motor vehicles [8'6"] on the public roads of this state. NDCC § 39–12–04. Ames counters this response by pointing to the same section 39–12–04, NDCC, which exempts farm equipment from the width restriction:

"*Width, height, and length limitations on vehicles—Exceptions.* Vehicles operated on a highway in this state may not exceed the following width, height, or length limitations:

1. A total outside width, including load thereon, of eight feet six inches [2.59 meters]. This limitation does not apply to:

. . . . .

b. Implements of husbandry being moved by resident farmers, ranchers, dealers, or manufacturers between sunrise and sunset. Furthermore, the limitation does not apply to implements of husbandry being moved between sunset and sunrise by resident farmers, ranchers, dealers, or manufacturers on public state, county, or township highway systems other than interstate highway systems."

Because his farm equipment is not subject to the width restriction while travelling on public roads, Ames contends that the Ackermans's cattle guards and gateways restrict the width of his passage, despite the fact that, by statutory authority, farm equipment is not subject to width restrictions.

Ames bases his definitions of "motor vehicle" and "vehicle" on those contained in section 39–01–01, NDCC. *See* NDCC § 1–01–09 (word defined by statute always has same meaning, except when contrary intention appears). But those definitions apply only to words used in Title 39, NDCC, as section 39–01–01, NDCC, is prefaced by the clause, "*In this title*, unless the context or subject matter otherwise requires ... 'motor vehicle' means ..." NDCC § 39–01–01 (emphasis added). Therefore, the words used in section 24–10–02, NDCC,—the statute on which Ames relies—are not necessarily subject to the definitions contained in section 39–01–01, NDCC. *Cf. Matter of Estate of Josephsons*, 297 N.W.2d 444 (N.D.1980) [manner in which a statutory term is defined in one instance will not necessarily control the definition to be applied in a different situation]. We therefore construe section 24–10–02, NDCC, according to the usual rules of statutory construction.

A general rule of statutory construction presumes that the legislature did not intend an absurd and ludicrous result or unjust consequences. *Witthauer v. Burkhart Roentgen, Inc.*, 467 N.W.2d 439 (N.D.1991). If no definition to a word contained in a certain section is given, the word is to be understood in its ordinary sense, construed according to the context in which it lies, and interpreted to give a reasonable result. NDCC §§ 1–02–02, 03; *Witthauer, supra; Westman v. North Dakota Workers Compensation Bureau*, 459 N.W.2d 540 (N.D.1990); *Saetz, supra*.

Some indication of the ordinary sense, context, and reasonable result of the wordings of section 24–10–02, NDCC, is found in our prior case of *Saetz v. Heiser, supra*. In *Saetz*, we interpreted sections 24–06–28 and 24–10–02, NDCC, in considering if the legislature intended to authorize the installation of gates, thereby closing section lines to the public. In light of the Court's prior decision in *Small v. Burleigh County, supra*, and in light of the fact that the State holds section lines as a trustee for the public, *Wenberg v. Gibbs Township*, 31 N.D. 46, 153 N.W. 440 (1915), we held in *Saetz* that "the Legislature did not intend to violate its trust by tolerating fencing in any form which would effectively deprive the public of its right to free passage over section lines." *Id.* at 72. The legislative purpose behind section 24–06–28, NDCC, as amended in 1975, in allowing section-line fencing was to accomplish a balancing of the public right to passage and the right of the fee owner in the section line. The balancing of the rights was validly accomplished by our interpretation of section 24–06–28, NDCC, requiring cattle guards *and* gateways at every point where a fence crosses a section line, pursuant to Chapter 24–10, NDCC. This permits the free movement of vehicles over cattle guards and permits bypass of the cattle guard for livestock or equipment movement through the gateway. *Saetz, supra*. This interpretation was codified in the 1977 amendments to sections 24–06–28 and 24–10–02, NDCC.

Ames contends that because the cattle guards are for the passage of motor vehicles, and gateways are for the passage of cattle and not vehicles, requiring a gateway, but not a cattle guard, to be wide enough to permit passage of his farm equipment is contrary to the purpose of the statute. But Ames's contention would have us interpret section 24–10–02, NDCC—in order to allow free and unrestricted access to section lines—to essentially require 66–foot wide cattle guards or 66–foot wide gateways simply because he, as a member of the public, has a 66–foot wide easement. We believe that the clause in section 24–10–02, NDCC, which requires that a "cattle guard must be so constructed as to permit the passage of motor vehicles through and over the same" applies to automobiles, pick-up trucks, and the like. The legislative history behind section 24–10–02, NDCC, supports this conclusion. *See* Testimony of Rep. Jack Murphy on House Bill 1129 before the House Agriculture Committee, January 14, 1977 [The cattle guard is for "the man in the car."].

By installing a cattle guard of sufficient width and strength to allow the passage of automobiles, pick-up trucks, and the like which are permitted to travel on other public roads, and a gateway which, although not as convenient, will allow the passage of wider vehicles not ordinarily allowed to travel on public roads unless they are implements of husbandry, a reasonable balance is achieved between the public's right to travel and the rights of those who have an interest in the land which straddles the section lines. We doubt that the Legislature intended, as a matter of law in every case, that a person who installed a cattle guard must continually increase its width and strength with every introduction of wider and wider farm equipment. It would likewise be unreasonable to require those who have received permission from a governing entity to fence a section line to install a 66–foot wide cattle guard which is capable of supporting a multi-ton implement of husbandry.

As to the gateways, there is no mention in section 24–10–02, NDCC, or any other section, that would require gateways to be a specific width, and we will not interpret there to be one. Rather, it is

apparent that the Legislature left the precise size of the gateways, as well as the cattle guards, as a matter to be determined by the Board in the exercise of its discretion in the approval of the specifications for cattle guards and gateways pursuant to section 24–10–02, NDCC. The Legislature required only that the cattle guards be constructed so as to permit motor vehicles to pass through and over the guards, and that the gateways contain a gate which may be opened and closed easily by the public. Here the cattle guards will accommodate motor vehicles. The fact that they will not accommodate all motor vehicles does not make the guards illegal. There is no allegation that the gates do not open and close easily.

Because the Legislature has vested the Board with discretion in this matter, we do not substitute our judgment for that of the Board. *Shaw v. Burleigh County,* 286 N.W.2d 792 (N.D.1979). Under the separation of powers implied in our State Constitution, we are examining the act of a coordinate branch of government. Because the Board, not the Court, was given authority to approve the specification for the erection of cattle guards and gateways, we determine only whether or not the Board acted arbitrarily, capriciously, or unreasonably in reaching its decision to approve the Ackermans's specification. *Pic v. City of Grafton,* 460 N.W.2d 706 (N.D.

1990) [judicial review of non-judicial decision-making is, under separation of powers, limited to whether the decision is arbitrary, capricious, or unreasonable]; *Shaw, supra.* A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation. *Matter of Conservatorship of Kinney,* 495 N.W.2d 69 (N.D.1993). Under the facts of this case, we cannot conclude that the Board abused its discretion by acting arbitrarily, capriciously, or unreasonably in approving the specifications.

Because the Ackermans's cattle guards and gateways comply with North Dakota law, there is no need to address the propriety of denying Ames's petition for a writ of mandamus.

The amended judgment of the trial court is affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.