Darvin HIRSCH and Mary Kay Hirsch, Plaintiffs and Appellants,

v.

Wendelin SCHERR, Defendant and Appellee.

Civ. No. 9758.

Supreme Court of North Dakota.

July 17, 1980.

Pearce, Anderson & Durick, Bismarck, and Glenn Pomeroy, law student, for plaintiffs and appellants; argued by Pátrick W. Durick, Bismarck.

Rausch & Rausch, Bismarck, for defendant and appellee; argued by Richard P. Rausch, Bismarck.

PEDERSON, Justice.

Darvin and Mary Kay Hirsch brought an injunction action against Wendelin Scherr alleging that Scherr had violated the City Subdivision Ordinances by re-subdividing a lot situated adjacent to theirs. Summary judgment was granted in favor of Scherr. We affirm.

The Hirschs' home is located in Bismarck in North Hills Third Addition on Lot 24. They do not hold title to all of this lot. Scherr owns a small strip on the west side of Lot 24, and all of Lot 25 next door.

Scherr applied for and received building permits from the City Building Inspector, Jack Hegedus, to construct two duplexes, one on the west side of Lot 25 and the other on the remaining part of Lot 25 and the west portion of Lot 24. It is conceded by the parties that the construction does not violate any zoning ordinance as to area, length, width, setback or side separation requirements as between the duplexes themselves or the Hirschs' home.

At some point during the construction process of the duplexes, the Hirschs made an objection to the city building inspector regarding the issuance of the permit to Scherr. Mr. Hegedus affirmed that the construction undertaken by Scherr was in accordance with the regulations of the City of Bismarck.

Apparently this same subdivision question had been raised some years before. The record before us contains a letter written on June 18, 1974, by Mr. Hegedus, requesting an opinion of the city attorney on this matter, stating in relevant part:

"It has been the practice of this department for the 15 plus years that I have been associated with it, that if a person bought a lot in an approved subdivision that wasn't large enough for his home, he could purchase whatever amount of footage on the next lot to give him what he would need to meet his requirements as long as what would be left of the lot or combination of part of an adjacent lot would not be in violation of zoning regulations for lot size in its respective district.

"If we are wrong and every time a lot is broken down to be used with adjacent lots, I can see nothing but problems in the future. It would mean all of these would have to go through the City Planning Commission before a permit could be issued. This would be a delay of up to 180 days and a tremendous increase in the burden placed upon the City Planning Commission. I don't believe this is the intent of the regulations, but would you please give me your opinion on the matter."

The city attorney responded by letter dated June 19, 1974, that this was not a re-subdivision:

"The purchase of part of a lot which has already been platted and recorded is not a re-subdivision or a subdividing of the property. . . .

"In short, there is no change in the subdivision plat as recorded and approved, but simply your question involves the use of lots which have been platted and recorded and as stated, so long as they comply with the zoning requirements for size, area, setbacks, etc., there is no violation."

On October 9, 1979, the Hirschs had a summons and complaint served upon Scherr, alleging that Scherr had violated the City Subdivision Ordinances by re-subdividing Lot 25 and the strip of Lot 24 he owns into two separate lots which, they contend, requires prior approval of the City Planning Commission. The Hirschs asserted that they had been damaged in that their property value had been diminished as well as their right to quiet enjoyment of their property. They asked for $10,000 in compensatory damages, for injunctive relief ordering the removal of one of the buildings (which at this point was 70% completed), and for restoration of the lot.

Both parties brought motions for summary judgment alleging that, under the law,

they were entitled to judgment against the other, there being no real dispute as to the facts. The district court reviewed the applicable city zoning ordinances and reached the following conclusions:

1. There is no city ordinance restricting one building per platted or record lot;

2. Without such a prohibition a person may build as many houses as he wishes on a piece of land, providing the zoning lot requirements are complied with;

3. Subdividing means the creation, on paper, of a separately identifiable piece of land, which had not occurred in this case.

Summary judgment was awarded in favor of Scherr, which the Hirschs appealed to this court.

As a preliminary matter we note that Article 2, § 15.0230(4), of the City Zoning Ordinances of the City of Bismarck, provides that an injunction action is an appropriate method of proceeding in a case such as this:

"(4) Remedies. *In case any building or structure is erected*, constructed, . . . or maintained, or any building, structure, or land is used *in violation of this article*, the building inspector . . . or *any adjacent, nearby or neighboring property owner who would be affected by such violation*, in addition to other remedies, *may institute injunction*, mandamus, or other appropriate action in proceeding *to prevent the occupancy of such building*, structure, or land." [Emphasis added.]

■ As to the merits, we agree with the district court that Scherr's action in purchasing Lot 25, plus a strip of a lot which had already been platted and recorded, and erecting two buildings on this area, was not a re-subdivision of the property.

The crux of the Hirschs' complaint is that when they purchased their lot and saw that there was one empty lot next door, they expected only one house to be built on it. For this to be a valid cause for relief, there must be some statute or ordinance that provides there can be only one building per lot and that building two houses on a lot automatically constitutes a subdvision of the property. No such statute or ordinance exists.

The Bismarck City Zoning Ordinances, Appendix A, is broken down into four articles: 1. City Planning Commission; 2. Zoning; 3. Master Plan; 4. Regulations Governing the Subdivision of Land. These articles interrelate and must be read as a whole.

Section 15.0401 of Article 4 provides that the City Planning Commission is authorized to review and approve or disapprove the subdivision of land. Section 15.0404 defines subdivision as follows:

"The division of a lot, tract or parcel into lots for the purpose, whether immediate or future, of sale or of building development, . . . 'Subdivision' includes the resubdivision of one or more lots in a subdivision . . . ."

"Lot" is defined in this same section as "A portion of a subdivision, or other parcel of land intended as a unit for transfer of ownership or for development." This is not the only definition of the word "lot" given in the ordinances. Article 2 of the City Zoning Regulations defines two specific types of "lots":

"Lot—Record: Land designated as a separate and distinct parcel on a legally recorded subdivision plat or in a legally recorded deed filed in the records of Burleigh County, North Dakota.

"Lot—Zoning: A tract of land occupied or to be occupied by a principal building and its accessory buildings, together with such open spaces and yards as are required under the provisions of this article, . . . A 'zoning lot' need not necessarily coincide with a 'record lot' as herein defined."

These definitions are prefaced by the instruction that in the context of Article 2, "lot" means zoning lot, unless clearly indicated otherwise. We take this to mean that the definition of "record lot" may be applicable to other articles of the zoning regulations, such as Article 4 on "Regulations Governing the Subdivision of Land," as this article specifically deals with the platting

and recording of a piece of land. Thus, we are confronted with an ambiguity in the ordinances as it is unclear whether or not the restrictions in Article 4 on subdivision apply to "record lots" exclusively, or to both record and zoning lots under the more general definition of "lot" given in § 15.0404.

In *Grace Lutheran Church v. North Dakota Employment Security Bureau*, 294 N.W.2d 767 (N.D.1980), we stated the long-established rule that legislative intent must first be sought from the language of the statute. However, where a statute's language is ambiguous, as in the instant case, resort may be had to extrinsic aids. *Apple Creek Tp. v. City of Bismarck*, 271 N.W.2d 583 (N.D.1978). Here, the only extrinsic aids we were given were the letters by the city building inspector and the city attorney which indicate that this practice of purchasing additional footage of an adjoining lot in order to use one's lot in a particular fashion is not considered a re-subdivision in that there is no change in the subdivision plat as recorded and approved. The construction these officials have placed on the city ordinances is that subdivision means the creation, on paper, of a separately identifiable record lot. This practice has been approved for many years.

We have held that the practical construction of a statute by the agency administering it is entitled to some weight, *Clapp v. Cass County*, 236 N.W.2d 850 (N.D.1976); and that this court will give weight to the long-continued, practical construction placed upon statutes by the officers charged with the duty of applying them. *Horst v. Guy*, 219 N.W.2d 153 (N.D.1974). Additionally, § 1–02–39, NDCC, provides that if a statute is ambiguous the court may consider, among other matters, the administrative construction of the statute.

Applying the definition of subdivision followed by the building inspector to the facts, we conclude that Scherr has done nothing to cause the platted or record lot that he owns to be subdivided. As far as we know, Scherr has not attempted to sell one or the other, and we need not speculate as to the Hirschs' rights if Scherr were permitted to do that.

Although Article 2, § 15.0206(2) provides that there shall be no more than one principal building on one *zoning* lot, there is no such restriction anywhere in the ordinances as to one building per *record* lot. Thus, without such restriction, there is no reason why a landowner could not build more than one building on his record lot, provided the zoning lot requirements as to area, setback, size, etc., are complied with.

Therefore, giving some weight to the fact that the practical construction placed on the Bismarck city ordinances by the officers charged with applying them has been to allow landowners to purchase additional footage of neighboring lots without approval of the City Planning Commission, and in view of the conclusions reached by our review of the applicable ordinances discussed above, we affirm the decision of the district court granting summary judgment in favor of Scherr.

VANDE WALLE and SAND, JJ., concur.

ERICKSTAD, Chief Justice, dissenting.

I respectfully dissent from the reasoning and conclusion stated in the majority opinion.

Section 15.0401 of Article 4 of the Bismarck City Ordinances authorizes the City Planning Commission to review and approve or disapprove the subdivision of land within its jurisdiction. Section 15.0404 of Article 4 defines "subdivision" as follows:

"The division of a lot, tract or parcel of land into lots for the purpose, whether immediate or future, of sale or of building development, . . . . 'Subdivision' includes the resubdivision of one or more lots in a subdivision made and recorded prior to or after the date these regulations are adopted."

The subdivision regulations of Article 4 further define a "lot" as, "A portion of a subdivision, or other parcel of land intended as a unit for transfer of ownership or for development."

A review of the record clearly discloses that Scherr's action of constructing two du-

plexes, one on the west side of Lot 25 and the other on the remaining part of Lot 25 and the west part of Lot 24, constitutes a subdivision of land as defined in Section 15.0404 of the City Ordinances. After considering the definitions of "lot" and "subdivision" as set forth in Article 4, the district court stated in its memorandum opinion that, "At first blush, the position of the plaintiffs [the Hirsch's] appears valid." However, the court then went on to consider several other definitions of the word "lot" as found in Article 2 of the City Ordinances, and, thereafter, concluded that the subdivision of a lot means the creation, on paper, of a separately identifiable piece of land. This determination totally ignores the definition of subdivision as contained in Article 4, the pertinent regulations which govern the subdivision of land in the City of Bismarck.

Although considerable attention has been given to the distinction between the two specific types of "lots" defined in Article 2 of the City Ordinances, i. e., record lots and zoning lots, the distinction is insignificant and of diminutive importance to the present action. Article 2 specifically governs the subject of zoning in Bismarck and not the subdivision of lands. Section 15.0202 is the definition section of Article 2, and it states at the outset that "[f]or purposes of *this* article [Article 2] certain words and terms used herein are defined as follows:" [Emphasis added.] The definitions of "record lot" and "zoning lot" as contained in Article 2, therefore, have no application to Article 4, the regulation which governs the subdivision of land. Any reliance upon those two confusing definitions is misplaced.

It indeed has been the policy and practice of Bismarck city officials to allow for the "subdivision" of land without the prior approval of the City Planning Commission. A letter from the city attorney to the city building inspector reveals that the city attorney concluded, without expressing the reasons therefor, that the purchase of additional footage of neighboring lots by landowners, where said lots have already been platted, and recorded, is not a subdivision of the property. He apparently was of the opinion that if a lot complies with all of the relevant zoning requirements, no violation of the subdivision regulations occurred. The record discloses that some city officials have apparently taken this position in order to minimize the administrative burden that might be placed upon the City Planning Commission if required to review and approve or disapprove all "subdivisions" of land when neighboring lots are purchased by the adjoining landowners for whatever purpose. While compliance with the subdivision regulations may impose an administrative burden on the City Planning Commission, that alone is an insufficient reason for the position taken by city officials over the past two decades. If the regulations are unworkable, the regulations, rather than being ignored, should be referred to the City Commission for appropriate amendment. To disregard the pertinent subdivision regulations and continue the present policy will only serve to complicate the situation and result in continued confusion and litigation. What the majority opinion herein does is encourage self-help rather than compliance with administrative processes which are designed to keep neighbors good neighbors by preventing persons from taking precipitous arbitrary *ex parte* action with indifference. For these reasons, I respectfully dissent from the majority opinion which affirmed the district court's order granting summary judgment in favor of Scherr.

PAULSON, J., concurs.