Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for petitioner and appellee; argued by James Wright.

Robert E. Lane, Asst. Atty. Gen., North Dakota State Highway Dept., Bismarck, for respondent and appellant.

GIERKE, Justice.

This is an appeal by the North Dakota State Highway Department from a judgment of the district court reversing an administrative hearing officer's decision to suspend the driving privilege of Floyd Thornton. We reverse and remand with instructions.

**Floyd THORNTON, Petitioner and Appellee,**

v.

**NORTH DAKOTA STATE HIGHWAY COMMISSIONER, Respondent and Appellant.**

**Civ. No. 11329.**

Supreme Court of North Dakota.

Jan. 20, 1987.

The appeal in the instant case, brought by the North Dakota State Highway Department (Highway Department), follows an appeal by Floyd Thornton (Thornton) to the district court after a determination by an administrative hearing officer to suspend Thornton's driver's license. Thornton's appeal of the decision rendered by the administrative hearing officer, made pursuant to § 39–20–06, N.D.C.C., cited a number of specifications of error.[1] One of

---

**1.** Thornton's specifications of error included:

"1.

"The decision of the hearing officer in this matter violates Section 39–20–05(2), N.D.C.C., in that evidence was received that should not have been admitted due to foundational de-

fects in that the results of the blood tests conducted in the above case should not have been received into evidence in that the provisions outlined in 39–20–07(5)(10), N.D.C.C. were not followed.

Thornton's specifications of error, and the one which the district court utilized to reverse Thornton's suspension, involved Thornton's contention that the hearing officer's conclusion that Thornton was driving under the influence of intoxicating liquor was not supported by the evidence.

The evidence relied upon by Thornton centered around his own testimony regarding what he had been drinking on the day of the arrest which triggered his suspension. Thornton admitted to having one drink and part of another ("Windsor Sevens"), as well as imbibing two bottles of cough syrup. He was taking the cough syrup because of a bad cough and drank two different brands of medicine, both of which contained alcohol ("Green Drops", 60% alcohol, and White Drug Cough Medicine, 25% alcohol). The results of a blood test administered to Thornton after his arrest indicated a blood-alcohol concentration of .21 percent, over twice the presumptive level permitted by law.

At his administrative hearing, Thornton argued that since he had been taking cough syrup the entire day, the arresting officer could not arrest him for violating § 39–08–01(1)(b), N.D.C.C. (driving under the influence of intoxicating liquor). Therefore, because he had committed no crime, the hearing officer could not suspend his driving privileges pursuant to Chapter 39–20, N.D.C.C. In other words, Thornton argues that cough syrup is *not* an "intoxicating liquor" as provided in § 39–08–01(1)(b), N.D.C.C.; the administrative hearing officer could not have concluded that Thornton violated Section 39–08–01, N.D.C.C.; and the Highway Department could not suspend his driving privileges. Whether cough syrup is an intoxicating liquor and whether Thornton violated § 39–08–01(1)(b), N.D.C.C., are proper questions for review by the district court in an administrative appeal from an administrative hearing. *See,* Section 28–32–19(1), N.D.C.C. (Whether the agency's determination is in accordance with the law).

The district court accepted Thornton's contention and reversed the administrative hearing officer's determination suspending Thornton's driver's license. In its memorandum opinion, the court stated that "... 'driving under the influence of cough medicine' is not a crime under North Dakota Law." The district court further held that there was no infraction of § 39–08–01, N.D.C.C., and the factual findings of the administrative officer were erroneous and did not support the agency's decision to suspend Thornton's driver's license. It is from this decision of the district court which the Highway Department appeals.

Through this appeal, we are presented with the novel legal question of determining what constitutes an "intoxicating liquor" within the context of § 39–08–01(1)(b), N.D.C.C., and whether "cough syrup" is included within this definition. This is a proper issue for our review and our review is limited to the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. *See,* Sections 28–32–21 and 28–32–19, N.D.C.C.

Section 39–08–01, N.D.C.C., states in part:

> *"Persons under the influence of intoxicating liquor or controlled substances not to operate vehicle—Penalty.*
>
> 1. A person may not drive any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

---

"2.

"The conclusions of law made by the hearing officer that the arresting officer had probable cause to believe the Petitioner was driving his vehicle while under the influence of intoxicating liquor is not supported by a preponderance of the evidence.

"3.

"The evidence presented in the above case did not support the conclusion reached by the hearing officer that there was probable cause to believe the Petitioner had violated § 39–08–01, N.D.C.C.

"4.

"The decision of the hearing officer violates the Petitioner's constitutional rights."

a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

b. That person is under the influence of intoxicating liquor."

Thornton's contention is that since he was not under the influence of intoxicating liquor (he was only under the influence of cough syrup), he could not be arrested under the provisions of § 39–08–01(1)(b), N.D.C.C., and the Highway Department could not suspend his driving privileges. We disagree.

"'Intoxicating liquor' means and includes any beverage containing alcohol." Section 39–01–01(26), N.D.C.C. It is uncontroverted that the cough syrup taken by Thornton contained alcohol. In fact, the two cough medicines taken by Thornton were 120 proof and 50 proof respectively. Thornton relies on an interpretation of "liquor" or "beverage" which includes only "recreational" alcoholic beverages and not "medicinal" alcoholic beverages such as cough syrup. In support of his contention, Thornton relies on Titles 5 and 19 of the Century Code. Thornton's reliance on these statutory provisions is misplaced since the purposes of Title 5 and Title 19 are clearly different than the intention of the Legislature in enacting § 39–08–01, N.D.C.C. *See*, Section 1–01–09, N.D.C.C.

Title 5 relates to alcoholic beverages and regulates retail licensing, wholesaler licensing and wholesaler taxation. Title 5 by its very own terms excludes a number of products containing alcohol which, if imbibed, would produce intoxicating effects on any individual. Section 5–01–02, N.D.C.C. To include all products containing alcohol within Title 5 would require every grocery store, drugstore and convenience store to be licensed as alcoholic beverage retailers, as well as the wholesalers that supply them. Appropriately, retailers and wholesalers who trade in items that contain alcohol, such as medical and toilet preparations, flavoring extracts, and scientific and industrial products, are not included within the provisions of Title 5. This does not mean that the alcohol contained within these products is any less intoxicating.

Similarly, the provisions of Title 19 are clearly inapplicable. Title 19 relates to statutory regulations and protections enacted by our Legislature relating to foods, drugs, oils and compounds. Title 19 does not in any way attempt to control the presence of drivers who are under the influence of alcohol from driving on state roadways.

The intent of the Legislature in enacting § 39–08–01 is clear. The purpose of the legislation is to keep individuals who are under the deleterious effects of alcohol off the road. The definition of "liquor" and "beverage" have a common meaning, understood to be *any liquid for drinking.* Webster's Third New International Dictionary 210, 1319 (1971). Words in a statute are to be understood in their ordinary sense unless a contrary intention plainly appears. Section 1–02–02, N.D.C.C. Therefore, in keeping with the intent of the Legislature, an intoxicating liquor, as contemplated by § 39–08–01(1)(b), N.D.C.C., includes any liquid which, when taken into the body, will intoxicate. For the purposes of § 39–08–01(1)(b), N.D.C.C., this definition of intoxicating liquors includes almost any liquid containing alcohol that could conceivably be consumed for the purposes of intoxication, whether it is beer, whiskey, cough syrup or janitor-in-a-drum. Accordingly, in keeping with the purposes of § 39–08–01, N.D.C.C., a person is "under the influence of intoxicating liquor" if that individual has imbibed any liquid containing alcohol which intoxicates or impairs his ability to function adequately while operating a vehicle.

In reaching this conclusion, we find persuasive the recent holding of the Alaska Court of Appeals in *Lambert v. State,* 694 P.2d 791 (Alaska Ct.App.1985). Although *Lambert* involved a criminal action and not

the administrative suspension of driving privileges as involved in this case, the issue on appeal concerned Lambert's contention that cough syrup (Nyquil and Terpin hydrate) is not an intoxicating liquor under the Alaska d.u.i. statute. The Alaska Court of Appeals held that cough syrup is an intoxicating liquor within the common understanding of that phrase and as such, can serve as the basis for a conviction of driving under the influence. *Lambert* at 794. In reaching this conclusion, the Alaska court considered not only the common meaning of the phrase "intoxicating liquor" but the intent of the Legislature in using that phrase. *Lambert* at 793.

It should be noted that, according to the Request and Notice form completed by the arresting officer, Thornton was charged under § 39–08–01, N.D.C.C., without indicating which specific provision he had violated. In addition to the provision discussed in this opinion (precluding individuals from driving if under the influence of intoxicating liquors), § 39–08–01, N.D.C.C., provides that no individual shall drive a vehicle if that person has a blood-alcohol concentration of ten one-hundredths of one percent by weight at the time of their test but within two hours after the driving. Section 39–08–01(1)(a), N.D.C.C. With a blood-alcohol concentration of .21%, clearly Thornton could have been arrested and his license could have been suspended for violating this provision of § 39–08–01, N.D.C.C., irrespective of his argument that cough medicine is not an intoxicating liquor under § 39–08–01(1)(b).

The propriety of the blood test administered to Thornton was one of the additional issues he raised as a specification of error in his appeal from the administrative hearing to the district court. However, this question was not answered by the lower court and is not before us today. Because the district court did not address all of Thornton's contentions and reversed the administrative hearing officer's determination to suspend Thornton's driving privi-

leges based on its misinterpretation of the term "intoxicating liquor", we reverse the district court's decision in regard to this matter and remand the case for a determination of the other issues raised by Thornton in his appeal to the district court.

Reversed and remanded.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.