**Richard Leroy PLASTER, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C4–92–590.**

Court of Appeals of Minnesota.

Sept. 22, 1992.

Janet C. Fesler, John E. Daubney Law Office, St. Paul, and Gary R. Bryant–Wolf, Elyria, Ohio, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and KALITOWSKI and KLAPHAKE, JJ.

## OPINION

RANDALL, Judge.

Appellant Richard Plaster's driver's license was canceled and indefinitely denied as "inimical to public safety" after respondent Commissioner of Public Safety concluded appellant had violated the "total abstinence" condition previously imposed upon his driving privileges. After a trial to the court, appellant's petition for reinstatement was dismissed. We reverse.

## FACTS

Due to alcohol related incidents, appellant's driving privileges were revoked under the DWI and implied consent laws. After completing chemical dependency rehabilitation, appellant's driving privileges

were reinstated on May 19, 1988. The reinstatement, however, was conditioned on appellant abstaining from the use of alcohol or controlled substances. As part of his request for reinstatement, appellant signed a "last drink statement." The statement provides in part:

I, Richard Leroy Plaster, have not used alcohol or any controlled substance since Oct. 31, 1985 and do not intend to do so in the future.

I understand that all future driving privileges in the State of Minnesota depend upon my continued total abstinence from alcohol and controlled substances, and that any use of alcohol or controlled substances coming to the attention of the Department of Public Safety will subject me to the immediate cancellation of all driving privileges, and the total denial of all driving privileges, until such time as I can again satisfy the Commissioner's requirements for establishing "rehabilitation." I understand that if I fail to maintain total abstinence all driving privileges will be canceled and denied indefinitely.

Appellant's license was valid only when accompanied by a "B card," which stated that any use of alcohol or drugs invalidated appellant's license.

On the evening of Friday, September 20, 1991, Peter Graham, a friend of appellant's, stopped by appellant's apartment. According to Graham, he brought with him four cans of Blatz beer for his own consumption. Appellant drank two cans of Sharp's "nonalcoholic beer" while Graham drank the Blatz.

Police officers were dispatched to appellant's apartment on a loud stereo complaint. Appellant lowered the volume of the stereo when asked to do so by the officers. While at appellant's door, Officer Scott Swenson testified he saw numerous cans of beer in and around the apartment. He said he did not recall seeing any nonalcoholic labels. Swenson claimed he noticed the odor of alcohol on appellant's breath and said he believed appellant was using alcohol. The officers were at appellant's apartment for just two to three minutes. During this time, Graham had been in the bathroom, and he did not know the police had been there until after they had left.

When the officers returned to their squad car, they ran a computer check on appellant. They discovered appellant held a driver's license conditioned on total abstinence from alcohol. Officer Swenson filed a report of the incident with the Department of Public Safety. The commissioner's representative concluded there was sufficient cause to believe appellant had used alcohol in violation of the total abstinence restriction on his license, and appellant's driver's license was canceled by respondent. As a result, appellant's work hours were reduced from full time to part time because a driver's license was necessary to perform a portion of his duties.

Appellant petitioned the trial court for reinstatement of his license pursuant to Minn.Stat. § 171.19 (1990). After a hearing, the trial court found that the only beer appellant drank on the evening in question was the Sharp's nonalcoholic beer.[1] In spite of this finding, the trial court concluded that appellant had failed to demonstrate that he has maintained "total abstinence" from alcohol that evening. The trial court denied appellant's request for relief, dismissed the petition, and affirmed the cancellation of appellant's license.

## ISSUE

Did the Commissioner have good cause to believe appellant violated the condition of "total abstinence" from alcohol when appellant consumed nonalcoholic beer?

## ANALYSIS

Appellant's driver's license was canceled pursuant to Minn.Stat. § 171.04, subd. 1(8) (1990), which provides that a driver's license shall not be issued to any person where

---

**1.** Although no specific finding appears in the trial court's written findings of fact, the trial court stated on the record that it found appel-

lant had consumed only a can or two of Sharp's nonalcoholic beer.

the commissioner has good cause to believe that the operation of a motor vehicle on the highways by such person would be inimical to public safety or welfare. *See also* Minn.Stat. § 171.14 (1990) (Commissioner has authority to cancel driver's license of a person who, at the time of cancellation, would not have been entitled to receive a license under the provisions of section 171.04); *Askildson v. Commissioner of Pub. Safety*, 403 N.W.2d 674, 676–78 (Minn.App.1987) (Commissioner has authority to require total abstinence from alcohol as a continuing condition for retaining a driver's license and to cancel and deny driving privileges for non-driving related use of alcohol), *pet. for rev. denied* (Minn. May 28, 1987).

Appellant testified he was drinking only Sharp's nonalcoholic beer on the evening in question. The Commissioner's position on appeal is based, in part, upon a belief that appellant was not truthful when he testified he drank only nonalcoholic beer that day. The Commissioner points to the officer's statement that he did not observe any beer cans with nonalcoholic labels and the officer's testimony that he felt he detected the odor of alcohol about appellant. However, the trial court stated on the record that the only beer appellant drank was one or two cans of Sharp's nonalcoholic beer. Neither party challenges this finding. It is supported by the evidence and we have no reason to disturb this finding on appeal.

Appellant testified he did not know whether Sharp's contained alcohol. Rather, he merely knew that it is labeled and referred to as "nonalcoholic." He also testified he never read the finer print on the label.[2]

The trial court found the issue to be whether appellant proved that he had complied with the total abstinence provision. Although the trial court accepted appellant's statement that he had consumed only nonalcoholic beer, the trial court dismissed appellant's petition for reinstatement. The trial court concluded that appellant

> failed to demonstrate that the beverage he consumed on September 20, 1991, which produced the odor of an alcoholic beverage on his breath, contained no alcohol at all.

We find the trial court's focus was misplaced and resulted in an impermissible shifting of the burden of proof to appellant. Although appellant must show the Commissioner acted unreasonably, *see McIntee v. State Dept. of Pub. Safety*, 279 N.W.2d 817, 821 (Minn.1979), the original burden is on the Commissioner to act with "good cause." *See* Minn.Stat. §§ 171.04, subd. 1(8), 171.14. The Commissioner must present some evidence to show he had "good cause" to believe appellant violated the total abstinence clause.

The Commissioner presented no evidence to prove the beverage appellant consumed, Sharp's, contained an intoxicant, either alcohol or any other controlled substance. The Commissioner presented no expert testimony regarding the level of intoxicants, if any, in Sharp's. Appellant did not present expert testimony either, and could only testify that he knew Sharp's was labeled nonalcoholic. Based on this record, appellant had no burden to go ahead with expert testimony discussing the chemical analysis of nonalcoholic beer. The Commissioner's evidence was limited to the officer observing cans of Blatz (real beer) in appellant's

---

2. A label on a can of Sharp's states in part:
SHARP'S
Miller
Non–Alcoholic Brew
Contains less than 0.5 percent alcohol by volume.
Miller's Unique and Patented Breakthrough in Brewing—Ever–Cool—Delivers Refreshing Beer Taste. This premium Malt Beverage Contains no Additives or Preservatives.
Another part of the can states:
NON–TAXABLE UNDER SECTION 5051 I.R.C.
THIS PRODUCT NOT SUBJECT TO FEDERAL

EXCISE TAXES, BUT STATE TAXES MAY APPLY.
AVERAGE ANALYSIS 12 OZ. SIZE:
68 CALORIES, 14.2 G carbohydrates, 0.6 G PROTEIN, 0.0 G FAT
BREWED WITH THE FINEST MALTED BARLEY,
SELECTED CEREAL GRAINS, AND CHOICEST HOPS.
BREWED BY MILLER BREWING COMPANY MILWAUKEE, WI
FOR CONSUMER QUESTIONS CALL 1–800–MILLER–6

apartment, his statement that he detected the odor of alcohol about appellant, and his "suspicion" that appellant had consumed some alcohol.

In examining the Commissioner's evidence, we note the following: the presence of cans of Blatz in appellant's apartment, without more, is not proof appellant drank any Blatz. The testimony of appellant that his acquaintance brought the Blatz over, while it could appear to be suspect as self-serving, was not rebutted. The trial court made no finding that it did not accept appellant's version of who brought the Blatz. By making its finding on the record that appellant drank only Sharp's, the trial court impliedly accepted appellant's testimony as to who was responsible for the Blatz.

As to the "odor of alcohol," we note that all the officer could have smelled was the odor of a beverage that he "thought" contained alcohol. It is not alcohol, but other ingredients such as malt, barley, hops, yeast, et cetera, that produce the beerlike odor of beer, whether alcoholic or nonalcoholic. Sharp's is brewed to smell like real beer, and thus would leave a beerlike odor on one's breath, but that does not mean that Sharp's is an alcoholic beverage. The label on the can itself sets out that it contains ingredients specifically brewed to "taste" like beer.

We are satisfied that the grave civil penalty of indefinite revocation of a driver's license cannot rest, without more, when the trial court made a finding that only Sharp's was consumed, on the claim of someone (who did not witness the consumption of any liquid) that he smelled the odor of alcohol.

There was *no proof* in this case that appellant drank any intoxicating beverage. There is proof that the nonalcoholic beer he drank looks and tastes like beer. The Commissioner simply did not have any hard evidence that appellant drank any intoxicant.

The label on a can of Sharp's states that it "contains less than 0.5 percent alcohol by volume." That is not a statement that the beverage contains alcohol. It is a statement that *if* the beverage does contain some alcohol, the amount is less than 0.5 percent. We note that any liquid containing less than 0.5 percent alcohol by volume is deemed by the State of Minnesota to be so noninjurious, so nonintoxicating, that it is *not* regulated as an intoxicant. *See* Minn.Stat. § 340A.101, subd. 2 (1990) ("Alcoholic beverage" is defined as any beverage containing more than one-half of one percent alcohol by volume). The State of Minnesota does not classify nonalcoholic beer with 3.2 beer, strong beer, wine, or hard liquor. Rather, it falls into the same class as pop, juice, and mineral water. It can be sold to minors, can be sold by retail establishments without a 3.2 beer or liquor license, can be opened and consumed in a moving vehicle, and is not subject to federal or state alcoholic beverage tax laws.

Nonalcoholic beer is labeled, marketed, and sold as "nonalcoholic" with the permission of the State of Minnesota. It is reasonable for people to conclude that "nonalcoholic" beer is not an intoxicant, is not a controlled substance, and is not an alcoholic beverage within the common sense meaning of these terms as people understand them.

Contrary to the state's argument, this case is unlike cases where the defendant became intoxicated by consuming medications. *See Thornton v. North Dakota State Highway Comm'r,* 399 N.W.2d 861, 863 (N.D.1987) (consumption of cough medications containing large percentages of alcohol resulted in a .21 alcohol concentration constituted consumption of "intoxicating liquor" within the meaning of North Dakota's DUI statute); *Lambert v. State,* 694 P.2d 791, 793 (Alaska Ct.App.1985) (cough medicines were "intoxicating liquors" and could serve as the basis of a DUI conviction). In *Thornton,* the court defined an "intoxicating liquor" as "any liquid which, when taken into the body, will intoxicate," including:

> any liquid containing alcohol that could conceivably be consumed for the purposes of intoxication, whether it is beer, whiskey, cough syrup or janitor-in-a-drum.

**908**

*Thornton,* 399 N.W.2d at 863. In those cases, unlike ours, the fact the liquid contained an intoxicant was not in dispute. The issue there revolved around whether liquids containing intoxicants, although not produced for the purpose of consumption as a typical alcoholic beverage, could serve as the basis for driving violations. Here, there is *no evidence* that "Sharp's" is an "intoxicating liquor." *See id.* Our issue is only whether consumption of Sharp's nonalcoholic beer constitutes a violation of appellant's total abstinence clause.

There is unfairness in the Commissioner's position. Appellant made an effort to comply with his total abstinence clause by drinking beer the State of Minnesota allows to be labeled, marketed, and sold as nonalcoholic. The legislative purpose of DWI laws, to keep individuals under the effects of alcohol off the road, is not served by punishing drivers who intentionally pass up intoxicants in favor of nonalcoholic beer.

Based on this record, the Commissioner failed to show it had good cause to believe appellant violated his total abstinence clause. The Commissioner's decision to cancel appellant's driver's license was arbitrary and unreasonable. We reverse the trial court's denial of appellant's petition for reinstatement.

### DECISION

The Commissioner did not establish it had good cause to believe appellant violated the condition of total abstinence imposed upon his driving privileges. We reverse and order reinstatement of appellant's conditional driving privileges.

Reversed.