NORTHERN X–RAY COMPANY, INC.,
Petitioner and Appellant,

v.

STATE of North Dakota by and through
its Tax Commissioner, Bob HANSON,
Respondent and Appellee.

Civil No. 950256.

Supreme Court of North Dakota.

Jan. 30, 1996.

William Pearce of Pearce & Durick, Bismarck, for petitioner and appellant. Appearance by Steve Miller, President of Northern X–Ray Company, Inc.

Christianne Yvette Runge, Assistant Attorney General, Tax Department, Bismarck, for respondent and appellee.

LEVINE, Justice.

Northern X–Ray Company, Inc. (Northern) appeals from a district court judgment affirming an order of the North Dakota Tax Commissioner (Commissioner) finding Northern liable for use taxes. We reverse and remand.

Northern is a Minnesota corporation that sells, installs, and services medical equipment. Northern sold medical equipment to North Dakota leasing companies, which leased the equipment to several North Dakota health care clinics. The leasing companies collected lease payments and sales taxes from the clinics. The sales taxes on the leased equipment were paid to the Commissioner. Northern installed the equipment at the clinics, and calibrated and tested it for use.

The work required to install the medical equipment items varied depending on the type of equipment. Some equipment required only minor adjustments and plugging in, other equipment had to be connected to building plumbing, and some equipment required elaborate wiring, bolting in place, and testing. Installation time for the equipment items varied from minutes to one week. All the equipment installed was removable, with removal times ranging from a matter of minutes to two days.

In September 1993, the Commissioner conducted a sales and use tax audit on Northern, covering the period from July 1990 to August 1993. In October 1993, the Commissioner issued a Notice of Determination and imposed a use tax liability against Northern, under section 57–40.2–03.3, NDCC. This section makes "contractors," who use "tangible personal property" in the performance of a contract, liable for payment of a use tax.[1]

---

1. Section 57–40.2–03.3, NDCC, says:
   "1. Where a contractor or subcontractor uses tangible personal property in the performance of his contract, or to fulfill contract or subcontract obligations, whether the title to such property be in the contractor, subcontractor, contractee, subcontractee, or any other person, or whether the titleholder of such property would be subject to pay the sales or use tax, such contractor or subcontractor shall pay a use tax at the rate prescribed by section 57–40.2–02.1 measured by the purchase price or fair market value of such property, whichever is greater, unless such property has been previously subjected to a sales tax or use tax by this state, and the tax due thereon has been paid.
   2. The provisions of this chapter pertaining to the administration of the tax imposed by section 57–40.2–02.1, not in conflict with the

Northern protested the Notice of Determination and requested a formal hearing. The parties stipulated to the facts, and submitted their arguments to the hearing officer on briefs.

The hearing officer issued his recommended findings of fact, conclusions of law and order on January 9, 1995. The hearing officer concluded that Northern was a "contractor" under section 57–40.2–03.3, NDCC, and that it became liable to pay the use tax when it installed the medical equipment in the North Dakota medical clinics. The Commissioner issued an order affirming its revised May 9, 1994, Notice of Determination assessing tax, penalties, and interest and adopting the hearing officer's findings. Northern appealed from the Commissioner's order to district court, which affirmed. Northern then appealed to this court.

The dispositive issue on appeal is whether Northern is a "contractor" under our contractor's use tax statute.

▪ The interpretation of a statute is a question of law and is fully reviewable by this court. *Koch Oil Co. v. Hanson*, 536 N.W.2d 702 (N.D.1995). Our primary goal in construing a statute is to discover the intent of the legislature. *Burlington Northern v. State*, 500 N.W.2d 615 (N.D.1993). We look first to the language of the statute in seeking to find legislative intent. *Rocky Mountain Oil & Gas Ass'n v. Conrad*, 405 N.W.2d 279 (N.D.1987). If a statute's language is clear and unambiguous, the legislative intent is presumed clear on the face of the statute. *Western Gas Resources, Inc. v. Heitkamp*, 489 N.W.2d 869 (N.D.1992), *cert. denied*, 507 U.S. 920, 113 S.Ct. 1281, 122 L.Ed.2d 675 (1993). If a statute's language is ambiguous, however, we may look to "extrinsic aids" in interpreting the statute. *Id.* at 872.

▪ Northern argues that "contractor," as used in section 57–40.2–03.3, means construction industry contractor and, therefore, does not encompass Northern. The Commissioner, on the other hand, argues that

"contractor" under section 57–40.2–03.3 is any entity that "uses tangible personal property in the performance of [a] contract." Generally, "[w]ords used in any statute are to be understood in their ordinary sense." NDCC § 1–02–02. An "ordinary sense" interpretation of "contractor" gives some support to both parties' construction of the term. *See* Webster's New World Dictionary 308 (2nd College Ed.1980) [defining "contractor" as "1. one of the parties to a contract[;] 2. a person who contracts to supply certain materials or do certain work for a stipulated sum, esp. one who does so in any of the building trades"]. "A statute is ambiguous if it is susceptible to differing but rational meanings." *Western Gas*, 489 N.W.2d at 872. Here, the term "contractor," as used in section 57–40.2–03.3, NDCC, is susceptible to different rational interpretations, and we conclude that section 57–40.2–03.3 is ambiguous.

▪ Therefore, we may look to extrinsic aids in determining what the legislature meant when it used the term "contractor" in section 57–40.2–03.3. *See* NDCC § 1–02–39. As Justice Holmes cautioned, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918). When the plain language of a statute is not "transparent," our codified rules of statutory interpretation direct us to look to the Code itself in determining the meaning of statutory terms. *See* NDCC § 1–02–02 ["[A]ny words explained in this code are to be understood as thus explained."]; NDCC § 1–02–03 ["Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, must be construed according to such peculiar and appropriate meaning or definition."]. "When the meaning of a word or phrase is defined in a section of our Code,

provisions of this section, govern the administration of the tax levied by this section.
3. The tax imposed by this section does not apply to medical equipment purchased as tangible personal property by a hospital or

by a longterm care facility as defined in section 50–10.1–01 and subsequently installed by a contractor into such hospital or facility."

that definition applies to any use of the word or phrase in other sections of the Code, except when a contrary intent plainly appears." *Adams County Record v. Greater North Dakota Ass'n,* 529 N.W.2d 830, 834 (N.D.1995) (citing NDCC § 1–01–09); *see also Guardianship of Braaten,* 502 N.W.2d 512 (N.D.1993).

The statutory term "contractor" is not defined in section 57–40.2–03.3, NDCC. Section 43–07–01(3), however, provides a clear and thorough definition of the term:

"A 'contractor' is any person, as hereinbefore defined, engaged in the business of construction, repair, alteration, dismantling, or demolition of bridges, highways, roads, streets, buildings, airports, dams, drainage or irrigation ditches, sewers, water or gas mains, water filters, tanks, towers, oil, gas, or water pipelines, and every other type of structure, project, development, or improvement coming within the definition of real or personal property, including the construction, alteration, or repair of property to be held either for sale or rental, and shall include subcontractor, public contractor, and nonresident contractor."

This definition is consistent with the references to contractor activities contained in section 57–40.2–14, which is part of the use tax section of the Code and discusses contractors involved in "the erection of buildings or the alteration, improvement or repair of real property."

■ Considering the statutory definition of "contractor" found in section 43–07–01(3), Northern's argument it is not a "contractor" under section 57–40.2–03.3 is reasonable. We must determine, however, whether the legislature favored a "contrary" definition for "contractor" when it drafted section 57–40.2–03.3. In seeking to uncover the legislature's intent, we are mindful of Judge Learned Hand's counsel:

"[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

*Cabell v. Markham,* 148 F.2d 737, 739 (2nd Cir.1945), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

Section 1–02–39, NDCC, lists several aids for the construction of ambiguous statutes:

"If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:

1. The object sought to be attained.

2. The circumstances under which the statute was enacted.

3. The legislative history.

4. The common law or former statutory provisions, including laws upon the same or similar subjects.

5. The consequences of a particular construction.

6. The administrative construction of the statute.

7. The preamble."

■ The first five subsections of section 1–02–39 are but components of that ancient rule of statutory construction, the "Mischief Rule." *See Heydon's Case,* 76 Eng. Rep. 637 (Exchequer 1584) (quoted in Hart & Sacks, The Legal Process 1144 (mimeo ed.1987)). Under this rule, a court considers four elements when interpreting a statute:

"1st. What was the common law before the making of the Act.

2nd. What was the mischief and defect for which the common law did not provide.

3rd. What remedy the [legislature] resolved and appointed to cure the disease. . . .

And 4th. The true reason of the remedy; and then the office of all the Judges is always to make sure construction as shall suppress the mischief, and advance the remedy. . . . " *Id.*

We construe section 57–40.2–03.3 with section 1–02–39 and the "Mischief Rule" in mind.

■ For North Dakota, two cases established the "common law" of the contractor's use tax. *United States v. Boyd,* 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964), held that a tax on government property used by government contractors was not an unconsti-

tutional tax on the United States. The constitution "does not forbid a tax whose legal incidence is upon a contractor doing business with the United States, even though the economic burden of the tax ... is ultimately borne by the United States." *Id.* at 44, 84 S.Ct. at 1521. In *Boeing Co. v. Omdahl,* 169 N.W.2d 696 (N.D.1969), we held that North Dakota's use tax was constitutional. We applied the "legal incidence" test in deciding that Boeing was liable for taxes on purchases it made for the federal government under its contracts with the United States. *Id.* at 707. We also warned that if the government itself had purchased the property, a tax on the purchase would be invalid. *Id.* at 705.

The legislative history of the bill underlying section 57–40.2–03.3 shows that the *Boeing* case was an impetus for the contractor use tax law. *See* Minutes of the House Finance and Taxation Committee, Hearings on HB 1417 (January 26, 1983) (hereinafter House Minutes); Minutes of the Senate Finance and Taxation Committee, Hearings on HB 1417 (March 7, 1983) (hereinafter Senate Minutes). Tax Department representative Kenneth Jakes stated that "the litigation was pursued with the intention of establishing user tax payment principles." House Minutes (testimony of Kenneth Jakes). He stated that the legislation was necessary because the litigation had not established the principles. *Id.* Walt Stack, also of the Tax Department, explained that (under *Boeing* ) contractors could avoid paying a tax on materials used in work for tax-exempt entities by entering into a "two-contract agreement." House Minutes (testimony of Walt Stack). Under such an agreement, the tax-exempt entity would buy the needed materials, and then hire a contractor to install them. *Id.* Stack explained that the bill was designed to

solve the problem of contractors avoiding taxes in this way. *Id.*

Stack stated that the bill "says—regardless who buys the tangible property contractor has to pay sales or use tax." Senate Minutes (testimony of Walt Stack). Stack specifically mentioned building materials in discussing the tax. *Id.; see also* Senate Minutes (testimony of C.W. McCoy). Stack also acknowledged that legislators had expressed concerns about the possibility that hospitals would have to pay taxes on scanners and x-ray equipment under the use tax law. Senate Minutes (testimony of Walt Stack). The legislature amended the bill to exempt hospitals based on this concern. *See* Senate Minutes; NDCC § 57–40.2–03.3(3).

Both the contractor use tax "common law" and the legislative history of section 57–40.2–03.3 clearly indicate the "mischief" which concerned the legislators: the existence of a loophole that allowed contractors to avoid paying taxes on materials they used in work for tax-exempt entities. *Boyd* and *Boeing* show that the contractors pursued for using this loophole—the contractors who committed the mischief—were companies doing much more than installing a piece of equipment. In *Boyd,* the contractors managed, operated, and performed construction at the Atomic Energy Commission's Oak Ridge facility. 378 U.S. at 41, 84 S.Ct. at 1520. In *Boeing,* the contractor was "engaged in installing, calibrating and checking out" missile launch sites, control centers and other facilities at Air Force missile bases in North Dakota. 169 N.W.2d at 699. The legislative history suggests that the legislature closed the loophole and imposed the use tax with such contractors in mind. The legislative history also suggests that the legislature was comfortable with imposing a tax on the use of "building materials" but not on "x-rays" or "scanners." [2] We cannot be certain what the

---

**2.** The hearing officer relied on section 57–40.2–03.3(3), which exempts hospitals and long-term care facilities from imposition of the contractor use tax, in concluding that the legislature did not wish to protect clinics that have medical equipment installed from imposition of the use tax. The purpose of the exemption contained in section 57–40.2–03.3(3) was indeed the protection of hospitals from use tax liability for medical equipment. *See* Minutes of the Senate Finance and Taxation Committee (March 7, 1983). The ex-

emption reflects an exercise of caution by the legislature in its effort to protect hospitals, notwithstanding our interpretation of the meaning of the term "contractor." As we stated in *Juhl v. Well,* 116 N.W.2d 625, 628 (N.D.1962):

"The rule, that the expression of one thing in a statute excludes all others, should be applied only where it appears to point to legislative intent. Thus the rule does not apply if there is some special reason for mentioning one thing

legislature meant when it used the term "contractor" in section 57–40.2–03.3. Based on the legislative history and the background of use tax law in North Dakota, however, we conclude that the legislature intended the term "contractor" to mean something more limited than a party to a contract when it used the term in the use tax law.

Our conclusion is at odds with that of the Commissioner, who argues, in effect, that anyone who enters a contract to install tangible personal property into real estate is a contractor under section 57–40.2–03.3. The Commissioner asks us to defer to the agency's interpretation of "contractor," and points to section 81–04.1–04.20, NDAC, which says "[a] contractor or subcontractor installing materials into real property located in North Dakota must pay sales or use tax on those materials regardless of who owns them." This regulation, however, presents the same problems as the statute: ambiguous use of the term "contractor." We give some weight to the "practical construction of a statute by the agency administering it" and we also give weight "to the long-continued, practical construction placed on statutes by the officers charged with the duty of applying them." *Hirsch v. Scherr,* 295 N.W.2d 131, 134 (N.D.1980). The record before us shows no unambiguous nor "long-continued" interpretation. *Compare Capital Elec. Co-op., Inc. v. Public Service Com'n,* 534 N.W.2d 587 (N.D.1995) [lengthy record of long-standing agency interpretation]. Moreover, we will not defer to even a long-standing agency interpretation that is contrary to the intent of the legislature. *See Berger v. State Personnel Board,* 502 N.W.2d 539, 542 (N.D. 1993) ["Even a long-established administrative policy must be set aside if it violates the intent of statute."]; *Moore v. North Dakota Workmen's Compensation Bureau,* 374 N.W.2d 71, 75 (N.D.1985) [An agency's "authority does not extend to the promulgation of an administrative regulation, or the application of a regulation in such a fashion, that is wholly inconsistent with the dictates of the Legislature."]. Therefore, we will not defer unreservedly to the agency interpretation of "contractor."

and none for mentioning a second." [Citations

There is a detailed definition of the term "contractor" in section 43–07–01(3), NDCC. There is no indication in the legislative history of section 57–40.2–03.3, NDCC, that the legislature intended to adopt a section-specific definition of "contractor" contrary to the definitions used elsewhere in the code. Therefore, we may look to the section 43–07–01(3) definition when construing section 57–40.2–03.3. *See* NDCC § 1–01–09. Nor is there any hint that using the definition of "contractor" found in section 43–07–01(3) subverts the purpose of section 57–40.2–03.3 or otherwise resuscitates the mischief sought to be remedied by the contractor use tax law: evasion of taxes by contractors acting in combination with tax-exempt entities. In this case, for example, sales taxes on the leased equipment have already been paid to the Commissioner. Therefore, we hold that the definition of "contractor" used in section 43–07–01(3) applies to the term "contractor" used in section 57–40.2–03.3.

The question remaining is whether Northern is a contractor under the definition provided in section 43–07–01(3). The facts of this case are not in dispute. Northern assembled certain items of medical equipment in North Dakota clinics. The items were all put in place within a matter of days and could be equally easily removed. Northern is not registered as a contractor, *see* NDCC § 43–07–02, and is not in the business of altering, repairing or improving real property. Under section 43–07–01(3), a contractor is one who is engaged "in the business of construction, repair, alteration, dismantling, or demolition" of property. There are no facts in the record that would show that Northern is a "contractor" under that definition. Therefore, we hold that Northern is not liable for payment of contractor use tax under section 57–40.2–03.3.

The judgment of the district court is reversed and the case is remanded for further proceedings in accordance with this opinion.

NEUMANN, SANDSTROM and MESCHKE, concur.

omitted.]

**VANDE WALLE**, Chief Justice, concurring specially.

I concur in the result and much of the language of the majority opinion. I write separately to note that in applying section 1–01–09, NDCC, [statutory definition of word applies to same word used in subsequent statutes] we have found a "contrary intention plainly appears" when the intent of the Legislature in enacting a statute is clear. For example, in *Ames v. Rose Tp. Bd. of Tp. Super'rs*, 502 N.W.2d 845 (N.D.1993), we held that the definitions of "motor vehicle" and "vehicle" in section 39–01–01, NDCC, did not control the definition of the same words in section 24–10–02, NDCC. We observed that section 39–01–01, NDCC, by its own terms limited the definitions to Title 39 and that the legislative history of amendments to section 24–10–02, NDCC, did not support the application of the Title 39 definitions to section 24–10–02, NDCC. *See also, e.g., State v. Pacheco*, 506 N.W.2d 408, 410 (N.D.1993) [application of statute which begins with phrase "[f]or the purposes of this title," is thereby limited to that title of the Code]; *Thornton v. North Dakota State Highway Com'r*, 399 N.W.2d 861 (N.D.1987)[definition of intoxicating liquor in Titles 5 and 19 does not control definition of that term as used in section 39–08–01, NDCC, because purposes of Titles 5 and 19 clearly different than intent of Legislature in enacting section 39–08–01]; *Matter of Estates of Josephsons*, 297 N.W.2d 444 (N.D.1980)[manner in which a statutory term is defined in one instance will not necessarily control the definition to be applied in a different situation].

Because the Legislature now ordinarily limits definitions to the particular act, customarily codified as a chapter of the code, thus evidencing an intent that the definition have no application beyond that act, we are left with the usual standards of statutory construction as applied by the majority opinion. To give effect to section 1–01–09, NDCC, it might be advisable to apply the holding in the Syllabus by the Court from an older decision, *Grabow v. Bergeth*, 59 N.D. 214, 229 N.W. 282, 283 (1930) "[w]here there is doubt as to the sense in which a given word is used in a statute, it is proper to refer to cognate or related legislation to determine the sense in which the word was employed in a particular statute."

For example, in *Thornton, supra*, we concluded the word "intoxicating liquor" was used in different acts for different purposes. The various acts were not related even though using the same word. Here, as the majority notes, there is good reason to conclude that the term "contractor" in the taxation statute is related to the term as used and defined in the act requiring the contractors to be licensed. The other aids to statutory construction lead to a similar conclusion. Thus, although the definition of "contractor" in section 43–07–01(3), NDCC, is limited by that section to Chapter 43–07, NDCC, I agree that definition is consistent with references to contractor activities as used in section 57–40.2–14, NDCC, and is consistent with legislative intent.