*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1279**

John Michael Kennedy, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed June 13, 2016
Affirmed
Kirk, Judge**

Anoka County District Court
File No. 02-CV-14-7150

John L. Lucas, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul,
Minnesota (for respondent)

Considered and decided by Jesson, Presiding Judge; Kirk, Judge; and Klaphake,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant challenges the district court order denying his petition under Minn. Stat. § 171.19 (2014) for reinstatement of his driver's license, which had been canceled by the Commissioner of Public Safety for noncompliance with a total abstinence restriction. He argues that (1) the exclusionary rule should apply to proceedings under Minn. Stat. § 171.19 and (2) the commissioner did not prove he knowingly consumed alcohol. We affirm.

**FACTS**

In June 2008, appellant John Michael Kennedy's driver's license was canceled as inimical to public safety following multiple convictions of driving while under the influence. In December 2008, after rehabilitation, Kennedy's driving privileges were reinstated. The reinstatement, however, was conditioned on Kennedy's total abstinence from the use of alcohol or controlled substances. As part of his request for reinstatement, Kennedy signed a statement agreeing "not [to] consume *any drink or product containing alcohol* or controlled substances."

In October 2014, a Minnesota State Trooper was parked in the left turn lane of an intersection looking for seat belt violators. The trooper testified that, while in this position, he observed Kennedy fail to yield to oncoming traffic and pulled him over. During the stop, the trooper "smelled the odor of an alcoholic beverage coming from [Kennedy's car]." The trooper testified that Kennedy told him that he had a beer about an hour earlier, and Kennedy testified that he told the trooper that he had a non-alcoholic beer. After learning

that Kennedy was driving on a restricted license, the trooper requested a preliminary breath test (PBT). Kennedy complied and the result of the test was 0.009. Kennedy was arrested and charged with a gross misdemeanor under Minn. Stat. § 171.09, subd. 1(f)(1) (2014), for driving while in violation of the total abstinence restriction on his license.

The matter was referred to the commissioner, who canceled Kennedy's license for noncompliance with his total abstinence restriction. Kennedy filed a petition for license reinstatement under Minn. Stat. § 171.19. After a hearing was held, the district court denied Kennedy's petition for reinstatement.

Kennedy appeals.

### D E C I S I O N

There is "[a] presumption of regularity and correctness . . . when license matters are reviewed" by this court. *Constans v. Comm'r of Pub. Safety*, 835 N.W.2d 518, 523 (Minn. App. 2013). "This court will not reverse a license determination unless it finds that it is unsupported by substantial evidence or is arbitrary and capricious." *Igo v. Comm'r of Pub. Safety*, 615 N.W.2d 358, 360 (Minn. App. 2000), *review denied* (Minn. Oct. 17, 2000).

The petitioner seeking license reinstatement under Minn. Stat. § 171.19 has the burden of proving entitlement for reinstatement of the canceled license. *Pallas v. Comm'r of Pub. Safety*, 781 N.W.2d 163, 166 (Minn. App. 2010). In a license-reinstatement proceeding, the district court conducts a de novo review of the commissioner's decision to cancel and "must weigh witness credibility and all of the evidence, and independently determine whether the cancellation is justified." *Igo*, 615 N.W.2d at 361. We review de novo the district court's application of the law, *id.*, and defer to the district court's

3

credibility determinations and ability to weigh the evidence, *Thorson v. Comm'r of Pub. Safety*, 519 N.W.2d 490, 493 (Minn. App. 1994).

## I. The exclusionary rule does not apply to Kennedy's proceeding under Minn. Stat. § 171.19.

The exclusionary "rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 620 (1974). The United States "Supreme Court has consistently restricted application of the exclusionary rule to 'those areas where its remedial objectives are thought most efficaciously served.'" *State v. Lindquist*, 869 N.W.2d 863, 868 (Minn. 2015) (quoting *Calandra*, 414 U.S. at 348, 94 S. Ct. at 620). It "has declined to apply the . . . exclusionary rule in circumstances in which doing so would not serve the central purposes of deterring police misconduct." *Id.*

This court analyzed whether the exclusionary rule applies to proceedings under Minn. Stat. § 171.19 in *Ascher v. Comm'r of Pub. Safety*, 527 N.W.2d 122, 125-126 (Minn. App. 1995), *review denied* (Minn. Mar. 21, 1995). In *Ascher,* a driver, who had been stopped at a sobriety checkpoint that was later found to be unconstitutional, sought reinstatement of his driver's license under Minn. Stat. § 171.19. *Id.* at 124-25. We held that a driver's license with a total abstinence restriction "may be cancelled and denied on the grounds that the licensee is inimical to public safety even if the evidence of alcohol consumption would not be admissible in an implied consent proceeding." *Id.* at 123-24. We reasoned that the "unlawful police conduct in establishing illegal checkpoints [had]

4

been adequately deterred by [excluding evidence in the driver's implied-consent proceeding], and that applying the exclusionary rule to exclude evidence that [the driver], having violated a condition of his licensure by consuming alcohol, is 'inimical to public safety' would not deter future unlawful police conduct to any significant degree." *Id.* at 126.

Kennedy argues that the district court erred by concluding that the exclusionary rule does not apply to proceedings under Minn. Stat. § 171.19, and because the trooper stopped him "without reasonable suspicion of criminal activity or traffic violation," any evidence that was obtained as a result of the traffic stop should be excluded. Specifically, he argues that the holding in *Ascher* should be limited because that case involved the unique situation where the roadblock was determined to be unconstitutional after the stop occurred and the driver had already received relief in his implied-consent proceeding. He also argues that if the exclusionary rule is never applied in these types of proceedings, law enforcement could act arbitrarily towards persons with total abstinence provisions without fear of suppression.

Based on *Ascher*, we conclude that the exclusionary rule does not apply to Kennedy's proceeding under Minn. Stat. § 171.19. At the time of his proceeding, Kennedy had a pending criminal matter where he could argue that the stop was unlawful. Therefore, any challenge to this proceeding would have minimal deterrence value. *Ascher*, 527 N.W.2d at 126. Moreover, Kennedy's other arguments fail because *Ascher* does not indicate its holding was intended to only apply to cases in which law enforcement was acting legally at the time of the stop and the record here does not contain any evidence that

5

the trooper was aware that Kennedy's license was conditioned on total abstinence at the time he initiated the stop. Based on these facts, the Fourth Amendment does not require suppression of evidence of Kennedy's PBT in his proceeding under Minn. Stat. § 171.19.

## II. The commissioner had sufficient cause to believe Kennedy violated the total abstinence restriction on his driver's license.

Minn. R. 7503.1700, subp. 6 (2013), states that "[t]he commissioner shall cancel and deny the driver's license and driving privilege of a person on sufficient cause to believe that the person has consumed alcohol or a controlled substance after the documented date of abstinence." In a proceeding under Minn. Stat. § 171.19, the commissioner must present "some evidence" to demonstrate that there was "good cause" to believe that the driver violated a total abstinence restriction. *Plaster v. Comm'r of Pub. Safety*, 490 N.W.2d 904, 906 (Minn. App. 1992). Kennedy must show that the commissioner acted unreasonably. *Igo*, 615 N.W.2d at 360.

Kennedy argues that the district court erred by concluding that the commissioner "demonstrated good cause to believe that [Kennedy] consumed alcohol in violation of the total abstinence restriction on his license." He argues that the commissioner did not prove that the non-alcoholic beer consumed by him contained alcohol and, even if the beer did contain alcohol, the commissioner did not prove that Kennedy knew it did.

We conclude that the commissioner presented "some evidence" to demonstrate that there was "good cause" to believe that Kennedy violated the total abstinence restriction on his license. *See Plaster*, 490 N.W.2d at 906. The trooper testified that the results of the PBT administered on Kennedy was 0.009 and that Kennedy told him that he had consumed

6

a beer about an hour before he was stopped. Kennedy also admitted that he had consumed a non-alcoholic beer. Although the commissioner did not prove that the non-alcoholic beer consumed by Kennedy contained any alcohol, it was impossible to do so because Kennedy testified that he did not know the brand of non-alcoholic beer he had consumed. Kennedy also did not produce any evidence that the non-alcoholic beer he consumed had no alcohol in it. Moreover, the fact that Kennedy did not know that non-alcoholic beer contained alcohol is irrelevant because Minn. R. 7503.1700, subp. 6, does not require a driver knowingly consume alcohol, it only requires the commissioner to have sufficient cause to believe the driver has consumed alcohol. The district court did not err in denying Kennedy's petition for reinstatement because the record supports the conclusion that the commissioner presented some evidence to establish good cause to believe that Kennedy violated his total abstinence restriction and that Kennedy failed to show that the commissioner's actions were unreasonable.

**Affirmed.**